

FILED
Mar 25 2015, 9:32 am
CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANTS

Erin L. Berger
Thomas G. Krochta
Vanderburgh County Public Defender's
Office
Evansville, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Robert J. Henke
Deputy Attorney General

Abigail R. Miller
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In the Matter of the Termination of the Parent-Child Relationship of J.W., Jr., A.W., and D.D., Minor Children, <br><br> T.D., Mother, and J.W., Sr., Father, <br> *Appellants-Respondents,* <br><br> v. <br><br> Indiana Department of Child Services, <br> *Appellee-Petitioner.* | March 25, 2015 <br><br> Court of Appeals Case No. 82A04-1408-JT-380 <br><br> Appeal from the Vanderburgh Superior Court <br><br> The Honorable Brett J. Niemeier, Judge, The Honorable Renee Allen Ferguson, Magistrate <br><br> Case Nos. 82D01-1401-JT-4, 82D01-1401-JT-5, and 82D01-1401-JT-6 |

**Najam, Judge.**

## Statement of the Case

[1]     T.D. ("Mother"), and J.W., Sr. ("Father") (collectively, "the Parents") appeal the trial court's termination of their parental rights over J.W., Jr., Z.W., and D.D. ("the Children"). The Parents raise a single issue for our review: whether the statutory waiting period under Indiana Code Section 31-35-2-4(b)(2)(A)(iii) is tolled during any period in which the Indiana Department of Child Services ("DCS") fails to provide or otherwise make services available to a parent prior to seeking the termination of that parent's parental rights. On this question of first impression, we hold that Indiana Code Section 31-35-2-4(b)(2)(A)(iii) simply requires the DCS to demonstrate compliance with the statutory waiting period—namely, that a child has been removed from a parent for fifteen of the most recent twenty-two months immediately prior to the termination hearing. That statute does not condition the waiting period on whether the DCS provided or otherwise made available any type of services to the parent. As such, we affirm the trial court's termination of the Parents' parental rights.

## Statement of the Facts

[2]     On August 31, 2012, DCS filed verified petitions alleging the Children to be Children in Need of Services ("CHINS"). On September 11, 2012, the court adjudicated the Children to be CHINS. Thereafter, the court issued a dispositional order and ordered the Parents to participate in parenting aid services, supervised visitation, and random drug screens.

[3] On July 2, 2013, DCS filed a petition to terminate the Parents' parental rights. On August 13, the court suspended that part of its dispositional order in the CHINS proceeding that required the Parents to participate in services and visitation. However, on December 17, the court dismissed the DCS's termination petition as prematurely filed, and the court reinstated the suspended requirements for the Parents to participate in services and visitation.

[4] On January 14, 2014, DCS filed its second petition to terminate the Parents' parental rights, which was a timely petition. After a fact-finding hearing, the court terminated Mother's and Father's parental rights over the Children. In doing so, the court found, among other things, that the Children had been removed from the Parents' care for at least fifteen of the most recent twenty-two months; that both Mother and Father had been unemployed and unable to maintain employment throughout most of the CHINS proceedings; that both Mother and Father were homeless throughout most of the CHINS proceedings and at the time of the termination hearing; that Mother and Father had admitted at the termination hearing that they were not in a position to take custody of the Children; and that Mother and Father had repeatedly failed to cooperate with, attend, or make progress in the parenting aid services, visitation, and drug screens when those programs had been made available to them. This appeal ensued.

## Discussion and Decision

[5] The Parents appeal the termination of their parental rights. We begin our review of this issue by acknowledging that "[t]he traditional right of parents to

establish a home and raise their children is protected by the Fourteenth Amendment of the United States Constitution." *Bailey v. Tippecanoe Div. of Family & Children (In re M.B.)*, 666 N.E.2d 73, 76 (Ind. Ct. App. 1996), *trans. denied.* However, a trial court must subordinate the interests of the parents to those of the child when evaluating the circumstances surrounding a termination. *Schultz v. Porter Cnty. Office of Family & Children (In re K.S.)*, 750 N.E.2d 832, 837 (Ind. Ct. App. 2001). Termination of a parent-child relationship is proper where a child's emotional and physical development is threatened. *Id.* Although the right to raise one's own child should not be terminated solely because there is a better home available for the child, parental rights may be terminated when a parent is unable or unwilling to meet his or her parental responsibilities. *Id.* at 836.

[6] Before an involuntary termination of parental rights can occur in Indiana, DCS is required to allege and prove, in relevant part:

> (A) that one (1) of the following is true:
>
>> (i) The child has been removed from the parent for at least six (6) months under a dispositional decree.
>>
>> (ii) A court has entered a finding under IC 31-34-21-5.6 that reasonable efforts for family preservation or reunification are not required, including a description of the court's finding, the date of the finding, and the manner in which the finding was made.
>>
>> (iii) *The child has been removed from the parent and has been under the supervision of a local office or probation department for*

> *at least fifteen (15) months of the most recent twenty-two (22) months, beginning with the date the child is removed from the home as a result of the child being alleged to be a child in need of services or a delinquent child;*

(B) that one (1) of the following is true:

(i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.

(ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

(iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;

(C) that termination is in the best interests of the child; and

(D) that there is a satisfactory plan for the care and treatment of the child.

Ind. Code § 31-35-2-4(b)(2) (emphasis added). DCS's "burden of proof in termination of parental rights cases is one of 'clear and convincing evidence.'" *R.Y. v. Ind. Dep't of Child Servs. (In re G.Y.)*, 904 N.E.2d 1257, 1260-61 (Ind. 2009) (quoting I.C. § 31-37-14-2).

[7] When reviewing a termination of parental rights, we will not reweigh the evidence or judge the credibility of the witnesses. *Peterson v. Marion Cnty. Office*

*of Family & Children (In re D.D.)*, 804 N.E.2d 258, 265 (Ind. Ct. App. 2004),
*trans. denied*. Instead, we consider only the evidence and reasonable inferences
that are most favorable to the judgment. *Id.* Moreover, in deference to the trial
court's unique position to assess the evidence, we will set aside the court's
judgment terminating a parent-child relationship only if it is clearly erroneous.
*Judy S. v. Noble Cnty. Office of Family & Children (In re L.S.)*, 717 N.E.2d 204, 208
(Ind. Ct. App. 1999), *trans. denied*.

[8]   Here, in terminating the Parents' parental rights, the trial court entered specific
findings of fact and conclusions thereon. When a trial court's judgment
contains special findings and conclusions, we apply a two-tiered standard of
review. *Bester v. Lake Cnty. Office of Family & Children*, 839 N.E.2d 143, 147 (Ind.
2005). First, we determine whether the evidence supports the findings and,
second, we determine whether the findings support the judgment. *Id.*
"Findings are clearly erroneous only when the record contains no facts to
support them either directly or by inference." *Quillen v. Quillen*, 671 N.E.2d 98,
102 (Ind. 1996). If the evidence and inferences support the trial court's
decision, we must affirm. *In re L.S.*, 717 N.E.2d at 208.

[9]   The Parents' only argument on appeal[1] is that the DCS failed to demonstrate
that the Children had been removed from the Parents for at least fifteen of the
twenty-two months immediately prior to the termination hearing. *See* I.C. § 31-

---

[1] The Parents concede that the DCS demonstrated all other elements required to terminate their parental
rights.

35-2-4(b)(2)(A)(iii). According to the Parents, "the calculation of months should have been tolled by the number of months that services were suspended by DCS" in accordance with the DCS's prematurely filed July 2013 petition for the termination of parental rights. Appellants' Br. at 3. The Parents concede that, absent this proposed tolling, fifteen of the relevant twenty-two months have passed.[2]

[10] The Parents' argument presents a question of first impression and requires us to interpret Indiana Code Section 31-35-2-4(b)(2)(A)(iii). Statutory interpretation is a question of law and is reviewed de novo, or without deference to the trial court's interpretation. *Curley v. Lake Cnty. Bd. of Elections & Registration*, 896 N.E.2d 24, 34 (Ind. Ct. App. 2008), *trans. denied*. As our supreme court has stated:

> When interpreting a statute, appellate courts independently review a statute's meaning and apply it to the facts of the case under review. If a statute is unambiguous, that is, susceptible to but one meaning, we must give the statute its clear and plain meaning. If a statute is susceptible to multiple interpretations, however, we must try to ascertain the legislature's intent and interpret the statute so as to effectuate that intent. We presume the legislature intended logical application of the language used in the statute, so as to avoid unjust or absurd results.

---

[2] The DCS asserts that we need not consider this argument on appeal because the Children had been removed for at least six months pursuant to a dispositional decree, which satisfies an alternative provision of Indiana Code Section 31-35-2-4(b)(2)(A), namely, subpart (i). But the trial court did not find that subpart (i) had been satisfied; rather the court found and relied exclusively on subpart (iii). We restrict our review of the court's judgment accordingly.

*State v. Evans*, 810 N.E.2d 335, 337 (Ind. 2004) (quoting *Bolin v. Wingert*, 764 N.E.2d 201, 204 (Ind. 2002)).  Moreover, "in interpreting a statute, we must consider not only what the statute says but what it does not say." *Curley*, 896 N.E.2d at 37.  In other words, "we are obliged to suppose that the General Assembly chose the language it did for a reason." *State v. Prater*, 922 N.E.2d 746, 750 (Ind. Ct. App. 2010), *trans. denied*.

[11]   Indiana Code Section 31-35-2-4(b)(2)(A)(iii) required the DCS to demonstrate that

> [t]he child has been removed from the parent and has been under the supervision of a local office or probation department for at least fifteen (15) months of the most recent twenty-two (22) months, beginning with the date the child is removed from the home as a result of the child being alleged to be a child in need of services or a delinquent child[.]

That language is unambiguous and simply requires the DCS to demonstrate that a specific waiting period has occurred—namely, fifteen of the most recent twenty-two months immediately prior to the termination hearing—with a child removed from the parent.  That statutory language does not condition that waiting period on whether the DCS provided or otherwise made available any type of services to the parent or, for that matter, whether the parent successfully or unsuccessfully participated in any services.

[12]   Indeed, the Parents' attempt to read such a provision into our termination statutes is contrary to well-established case law.  The Indiana Supreme Court has long recognized that, in "seeking termination of parental rights," the DCS

has no obligation "to plead and prove that services have been offered to the parent to assist in fulfilling parental obligations." *S.E.S. v. Grant Cnty. Dep't of Welfare*, 594 N.E.2d 447, 448 (Ind. 1992). Likewise, we have stated on several occasions that, although "[t]he DCS is generally required to make reasonable efforts to preserve and reunify families *during the CHINS proceedings*," that requirement under our CHINS statutes "is not a requisite element of our parental rights termination statute, and a failure to provide services does not serve as a basis on which to directly attack a termination order as contrary to law." *A.Z. v. Ind. Dep't of Child Servs. (In re H.L.)*, 915 N.E.2d 145, 148 & n.3 (Ind. Ct. App. 2009) (emphasis added) (citing I.C. § 31-34-21-5.5); *see also Elkins v. Marion Cnty. Office of Family & Children (In re E.E.)*, 736 N.E.2d 791, 796 (Ind. Ct. App. 2000) ("even a complete failure to provide services would not serve to negate a necessary element of the termination statute and require reversal."); *Stone v. Daviess Cnty. Div. of Children & Family Servs.*, 656 N.E.2d 824, 830 (Ind. Ct. App. 1995) ("under Indiana law, even a complete failure to provide services cannot serve as a basis to attack the termination of parental rights."), *trans. denied*. The Parents' argument on appeal amounts to a request to make the providing of services by the DCS a basis on which to directly attack a termination order, contrary to our case law, and reads into our termination statutes a provision that our legislature has not saw fit to include.[3]

---

[3] We note that this argument is the only argument made by the DCS on appeal that is actually responsive to the Parents' arguments on appeal. We also note that this argument first appears on page twenty-two of the DCS's twenty-four page brief.

[13] Moreover, the Parents were not without a remedy. Indiana Code Section 31-35-2-4.5(d)(2) allows parents to move to dismiss the petition to terminate the parent-child relationship when:

> (A) IC 31-34-21-5.6 is not applicable to the child;[4]
>
> (B) the department or the probation department has not provided family services to the child, parent, or family of the child in accordance with a currently effective case plan prepared under IC 31-34-15 or IC 31-37-19-1.5 or a permanency plan or dispositional decree approved under IC 31-34 or IC 31-37, for the purpose of permitting and facilitating safe return of the child to the child's home; and
>
> (C) the period for completion of the program of family services, as specified in the current case plan, permanency plan, or decree, has not expired.

See In re E.E., 736 N.E.2d at 796. The Parents do not suggest they filed a motion pursuant to that statute here.

[14] Further, insofar as the Parents' argument is, in essence, that they would have been able to remedy the conditions that resulted in the removal of the Children had they been given more time and/or opportunity, that argument is within the scope of Indiana Code Section 31-35-2-4(b)(2)(B), and it was within the trial court's purview to credit or not credit the Parents' argument accordingly. While the Parents do not challenge the court's findings and conclusions under

---

[4] This statute enumerates exceptions to the requirement that the DCS must make reasonable efforts to preserve and reunify families during CHINS proceedings. See In re E.E., 736 N.E.2d at 796.

Indiana Code Section 31-35-2-4(b)(2)(B), we note that the court found that Mother and Father had repeatedly failed to cooperate with, attend, or make progress in the parenting aid services, visitation, and drug screens when those programs had been made available to them. And the evidence supports the court's findings.

[15] In sum, we cannot say that the trial court's finding that the DCS satisfied its burden to show that the Children had been removed from the Parents for fifteen of the twenty-two months immediately prior to the termination hearing is contrary to law or otherwise clearly erroneous. As such, we affirm the court's termination of Parents' parental rights.

[16] Affirmed.

Mathias, J., and Bradford, J. concur.