## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jan 14 2016, 6:44 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Danielle L. Gregory
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Robert J. Henke
David E. Corey
Deputy Attorneys General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of the Termination of the Parent-Child Relationship of:

N.T. (Minor Child)

  and

W.T. (Father),

*Appellant-Respondent,*

v.

The Indiana Department of Child Services,

*Appellee-Petitioner*

January 14, 2016

Court of Appeals Case No.
49A04-1506-JT-489

Appeal from the Marion Superior Court

The Honorable Marilyn A. Moores, Judge
The Honorable Larry E. Bradley, Magistrate

Trial Court Cause No.
49D09-1410-JT-441

**Baker, Judge.**

[1] W.T. (Father) appeals the judgment of the juvenile court terminating his parental rights as to his child, N.T. (Child), arguing that the judgment is not supported by sufficient evidence. Finding that the juvenile court's judgment is supported by sufficient evidence, we affirm.

## Facts

[2] Child was born to Father and T.D. (Mother) on August 6, 2009. The three lived together, along with Mother's other children, until Mother and Father ended their relationship in 2012. Child remained in Mother's care after Father left the home. Child is developmentally delayed and has been diagnosed with post-traumatic stress disorder.

[3] On December 18, 2012, the Indiana Department of Child Services (DCS) filed a petition alleging that Child was a child in need of services (CHINS). The petition alleged that Mother lacked stable housing and suffered from serious mental health issues that required immediate medical attention. The petition also alleged that Father had not demonstrated a willingness or ability to care for Child and that his whereabouts were unknown.

[4] A family case manager (FCM), Kristie Smith, was assigned to the case. FCM Smith spoke with Father by phone in February 2013 and informed him of the allegations. Father acknowledged to FCM Smith that he had received a summons and an advisement of rights in the mail. Father's phone was then

disconnected and FCM Smith lost contact with him in April 2013. Father never again contacted FCM Smith to inquire about Child's welfare.

[5] On January 2, 2013, Mother entered a written admission to the facts contained in the CHINS petition. Father made his first appearance in court on April 10, 2013, and the juvenile court conducted an initial hearing. Following the hearing, the juvenile court ordered that Father would have supervised parenting time—he would visit Child only twice, once in April 2013 and once in January 2015. The juvenile court also ordered Father to appear at a pre-trial hearing on May 15, 2013, without further notice.

[6] Father failed to appear at the May 15 hearing. He also failed to appear at a periodic review hearing held on July 17, 2013. At that point, Father's counsel informed the juvenile court that Father had not responded to her regarding his case despite numerous efforts on her part to contact him. Accordingly, the juvenile court granted counsel's motion to withdraw her representation.

[7] On August 21, 2013, the juvenile court held a default hearing and Father again failed to appear. After finding that Father had received proper service, the juvenile court adjudicated Child to be a CHINS. It ordered that Father would receive no services until he made an appearance in court or at DCS "to demonstrate a desire or ability to care for [Child]." Ex. p. 79.

[8] A permanency hearing was held on September 24, 2014, and Father again failed to appear. Noting that neither parent had demonstrated the ability or willingness to care for Child, the juvenile court changed the permanency plan

from reunification to adoption. A review hearing was held on January 21, 2015, at which Father, who was again absent, was represented by counsel. The juvenile court maintained Child's placement in foster care, but ordered that Father would not have visitation until he made an appearance in court.

[9] On October 20, 2014, DCS filed a petition to terminate Mother and Father's parental rights as to Child. Father appeared at a pre-trial hearing on November 14, 2014, at which point the juvenile court appointed him counsel. He acknowledged that he had been served with a summons, an advisement of rights, and a copy of the petition. Father appeared again, this time by telephone, at a December 5, 2014, pre-trial hearing. He did not appear, but was represented by counsel, at two subsequent pre-trial hearings held on January 2 and March 12, 2015.

[10] The juvenile court held a termination factfinding hearing on April 2 and April 9, 2015. Father's only appearance at this hearing was by telephone on April 9. On May 6, 2015, the juvenile court entered an order terminating Mother and Father's parental rights as to Child. It noted that Father had shown no interest in the court proceedings, had failed to maintain contact with the FCM and his attorney, and had only visited Child on two occasions. Father now appeals.

## Discussion and Decision

[11] The Fourteenth Amendment to the United States Constitution protects a parent's right to establish a home and raise her children. *In re G.Y.*, 904 N.E.2d 1257, 1259 (Ind. 2009). Our Supreme Court has observed that "[a] parent's

interest in the care, custody, and control of his or her children is 'perhaps the oldest of the fundamental liberty interests.'" *Id.* (quoting *Troxel v. Granville*, 530 U.S. 57, 65 (2000)). However, this right is not absolute and the interests of parents must be subordinated to those of their children when parents are unable or unwilling to meet the responsibilities that accompany this right. *Id.* at 1259–60.

[12] When reviewing the termination of parental rights, we do not reweigh the evidence or judge the credibility of the witnesses. *Id.* at 1260. We consider only the evidence and reasonable inferences drawn therefrom that are most favorable to the judgment. *Id.* When the juvenile court enters findings of fact and conclusions of law, we apply a two-tiered standard of review. *Id.* We determine whether the evidence supports the findings and then determine whether the findings support the judgment. *Id.* We will reverse the juvenile court's judgment only if it is clearly erroneous, meaning that the juvenile court's findings do not support its conclusions or its conclusions do not support its judgment. *Id.*

[13] Father makes two main arguments on appeal. First, he argues that DCS failed in its duty to make reasonable efforts to reunify him with Child. Second, he takes issue with several of the juvenile court's findings and argues that its judgment is not supported by sufficient evidence. We deal with each of these arguments in turn.

[14] In regard to Father's first argument, he is indeed correct to point out that our CHINS statute requires DCS to "make reasonable efforts to preserve and reunify families." Ind. Code § 31-34-21-5.5. DCS can attempt to do this by providing parents with services designed "to make it possible for the child to return safely to the child's home." *Id.* Father points out that he was not provided with any services in this case. However, this was not due to any lack of effort on the part of DCS. Rather, it was the direct result of Father's failure to adequately participate in the CHINS proceeding. DCS contends that it was fully prepared to offer services to Father had he attended the juvenile court's proceedings, appeared at DCS, or maintained contact with the FCM.

[15] Furthermore, the statute that Father relies upon applies to CHINS proceedings, and we are far beyond the CHINS stage of this case. This Court has previously observed that,

> in seeking termination of parental rights, the DCS has no obligation to plead and prove that services have been offered to the parent to assist in fulfilling parental obligations. Likewise, we have stated on several occasions that, although the DCS is generally required to make reasonable efforts to preserve and reunify families *during the CHINS proceedings*, that requirement under our CHINS statutes is not a requisite element of our parental rights termination statute, and a failure to provide services does not serve as a basis on which to directly attack a termination order as contrary to law.

*In re J.W., Jr.*, 27 N.E.3d 1185, 1190 (Ind. Ct. App. 2015) (quotations omitted) (emphasis original), *trans. denied*.  Accordingly, Father has waived this issue by failing to raise it in the CHINS proceeding.

[16]  Father next challenges the sufficiency of the evidence in support of the juvenile court's determination.  A petition to terminate parental rights must allege, among other things:

> (B)  that one (1) of the following is true:
>
>> (i)  There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
>>
>> (ii)  There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.
>>
>> (iii)  The child has, on two (2) separate occasions, been adjudicated a child in need of services; [and]
>
> (C)  that termination is in the best interests of the child.

Ind. Code § 31-35-2-4(b)(2).[1]  Indiana Code section 31-37-14-2 requires DCS to prove these allegations by clear and convincing evidence.  Father argues that

---

[1] The statute also requires that the child be removed from the parent's care for a certain period of time and that there be a satisfactory plan for the care and treatment of the child following termination.  I.C. § 31-35-2-

several of the juvenile court's findings are erroneous and that its decision to terminate his parental rights cannot stand without them.

[17]    He first takes issue with the following finding regarding the CHINS proceeding:

> 7.    [Father's] whereabouts were unknown at the time the [initial CHINS] Petition was filed, but appeared for a continued initial hearing on April 10, 2013, at which time counsel was appointed for him.

Appellant's App. p. 17. Father argues that it is not true that his whereabouts were unknown, as Mother knew his whereabouts. Appellant's Br. p. 16. However, even were we to assume that this finding was erroneous, this would not affect our review of the juvenile court's judgment in this case. The initial proceedings were continued, in part, because of Father's absence, and Father does not dispute that he was later made aware of those proceedings and given an opportunity to participate. Therefore, whether his whereabouts were initially known or unknown is inconsequential.

[18]    Father also argues that the juvenile court's next finding is erroneous:

> 8.    [Father] may have attended one other court hearing. His whereabouts became unknown and his court appointed attorney withdrew [her] appearance.

---

4(b)(2)(A), (D). Father does not challenge the juvenile court's determination that these requirements were met in this case. Appellant's Br. p. 20.

Appellant's App. p. 17. Father argues that this only indicates that he was not communicating with his attorney, not that his whereabouts were unknown. We find this to be a distinction without a difference. If several attempts are made to contact a person at his residence and no response is received, one can certainly say that the person's whereabouts are unknown.

[19] Finally, Father takes issue with the following finding:

> 18. … [Father] attended one or two court hearings, visited [Child] two times since December of 2012, failed to contact the family case manager and made his whereabouts unknown. He failed to appear at either trial date in this termination matter. He has demonstrated he is not willing to make the effort to be a parent to [Child].

*Id.*[2] Father argues that "[p]art of this finding is not supported by the evidence." Appellant's App. p. 23. His argument is effectively a repeat of the claim that he did not make his whereabouts unknown. Additionally, in an effort to excuse his absence, he alleges that Mother made misrepresentations to him regarding the status of the proceedings. However, even had this been the case, Father had been given notice of future proceedings when he initially attended court, and he failed to maintain contact with his attorney or with the FCM, both of whom were actively trying to communicate with him regarding the proceedings.

---

[2] Father also takes issue with the juvenile court's finding that "[d]isposition was held on August 21, 2013. No services were ordered but the family case manager at the time would have referred Father Engagement." Appellant's App. p. 17-18. Father argues that he was never referred any services. However, the juvenile court merely found that services *would have* been referred had Father complied with its order that he appear in court or at DCS.

Under these circumstances, the juvenile court could certainly have found that Father lacked interest in the proceedings, which indicated that he was not willing to make the effort to parent Child.

[20] A Father's failure to show interest in his child's termination proceedings is certainly probative of whether the conditions that led to the child's removal are likely to be remedied and whether termination is in the child's best interests. *See In re A.P.*, 981 N.E.2d 75, 83-84 (Ind. Ct. App. 2012) (father's failure to attend proceedings resulted in "no evidentiary basis to allow the trial court to conclude that Father's neglect would not continue"). It is not the case here that Father was unaware of the proceedings or that his attorney had not attempted to contact him. We are therefore dealing with a knowing failure to appear. Accepting Father's argument as to the sufficiency of the evidence in this case would allow parents in termination proceedings to simply not attend those proceedings and then argue that the juvenile court could not terminate their rights because it knew nothing about them. It is obvious that this cannot, and should not, be the law.

[21] Furthermore, the juvenile court's decision was based on more than Father's failure to appear in court. Father had lost contact with both his attorney and with the FCM. He had shown no interest in Child's welfare and had only visited Child on two occasions. We believe that this evidence was sufficient to support a termination of his parental rights, as it indicated that Father was unwilling to parent Child and that Child's special needs would go unmet in Father's care.

The judgment of the juvenile court is affirmed.

Bradford, J., and Pyle, J., concur.