## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Apr 28 2017, 9:46 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Mark Small
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Marjorie Newell
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of the Termination of the Parent-Child Relationship of: J.N.S., G.L.S., and N.M.M. (minor children);

O.S. (mother),

*Appellant-Respondent,*

v.

The Indiana Department of Child Services,

*Appellee-Petitioner.*

April 28, 2017

Court of Appeals Case No. 28A05-1611-JT-2682

Appeal from the Greene Circuit Court

The Honorable Erik C. Allen, Judge

Trial Court Cause Nos.
28C01-1604-JT-2
28C01-1604-JT-4
28C01-1604-JT-6

**Pyle, Judge.**

# Statement of the Case

O.S. ("Mother") appeals the termination of the parent-child relationship with her daughters, N.M. ("N.M."), J.S. ("J.S."), and G.S. ("G.S.") (collectively "the children"), claiming that there is insufficient evidence to support the termination. Specifically, Mother argues that the Department of Child Services ("DCS") failed to prove by clear and convincing evidence that termination of the parent-child relationship is in the children's best interests. Concluding that there is sufficient evidence to support the termination of the parent-child relationship, we affirm the trial court's judgment.

We affirm.

# Issue

Whether there is sufficient evidence to support the termination of the parent-child relationship.

# Facts

Mother has three daughters, N.M., who was born in 2012, J.S., who was born in 2013, and G.S., who was born in 2014. K.S. ("Father") is the father of J.S. and G.S.[1] N.M.'s father is J.P.[2] In February 2015, a DCS case manager ("the case manager") investigated a report that the children were being neglected. At

---

[1] Father voluntarily relinquished his parental rights in September 2016 and is not a party to this appeal.

[2] J.P. was not a party below and is not a party on appeal.

that time, Father was in jail for physically abusing Mother in front of the children, and Mother was living in a motel room with the three girls. The room was cluttered with diapers, trash, food debris, and clothes. The two older girls were extremely active but had no safe play areas. The urine-soaked cot where five-month-old G.S. slept was wedged between a dresser and a double bed. The case manager removed the children because of the unsafe living environment and recurring domestic violence in the home.

[4] The three girls were adjudicated to be children in need of services ("CHINS") in April 2015. Mother was court-ordered to participate in home-based services, therapy, and supervised visitation. The trial court also ordered Mother to find stable income and housing. The children were placed in foster care together.

[5] One year later, in April 2016, DCS filed petitions to terminate the parental relationship between Mother and the children. Testimony at the September 2016 termination hearing revealed that Mother had not successfully completed the court-ordered services. Specifically, Mother, who was often in bed when the home-based service provider arrived at her motel room, did not understand why it was important for her to be out of bed and ready for the appointments. When the service provider pointed out that Mother would have to maintain a schedule once her children were returned to her care, Mother responded that her children would sleep late.

[6] Mother's therapist also testified that Mother was often asleep when the therapist arrived for the appointments. The therapist further explained that

Mother had often cut herself with razor blades, and the most recent cutting incident had occurred just two months prior to the termination hearing. The therapist concluded that Mother had been unable to successfully complete treatment. Mother had also failed to obtain stable income and housing.

[7] The supervised visitation coordinator testified that Mother had not provided activities for the children during visitation, was often distracted by her cell phone, and struggled to properly supervise her three daughters. Visitation between Mother and the children was suspended before the termination hearing because Mother had not demonstrated the ability to supervise the children.

[8] Also at the hearing, the case manager testified that termination was in the children's best interests. Specifically, she explained that "these kids have been in care since February of 2015, [and] we are still at the point of really pretty much the same situation that brought us into this. . . . [T]hese kids need permanency . . . and they are thriving where they are . . . ." (Tr. 58). The case manager further testified that the plan for the children is foster parent adoption.

[9] The CASA also testified that termination was in the children's best interests. Specifically, the CASA explained that Mother had shown that "there was either a lack of ability or a lack of willingness . . . to make the necessary changes . . . in order to provide these [three] very young girls with a safe and stable home environment." (Tr. 231). The CASA further explained that the thriving children were happy and loved and that they "receive[d] attention and affection

and they also ha[d] structure and discipline and they deserve[d] permanency . . . ." (Tr. 231).

In October 2016, the trial court issued a nineteen-page order terminating Mother's parental relationship with the children. Mother now appeals the termination.

## Decision

The traditional right of parents to establish a home and raise their children is protected by the Fourteenth Amendment to the United States Constitution. *In re J.W., Jr.*, 27 N.E.3d 1185, 1187-88 (Ind. Ct. App. 2015), *trans. denied*. However, a trial court must subordinate the interests of the parents to those of the child when evaluating the circumstances surrounding a termination. *Id.* at 1188. Termination of the parent-child relationship is proper where a child's emotional and physical development is threatened. *Id.* Although the right to raise one's own child should not be terminated solely because there is a better home available for the child, parental rights may be terminated when a parent is unable or unwilling to meet his or her parental responsibilities. *Id.*

Before an involuntary termination of parental rights may occur, DCS is required to allege and prove, among other things:

> (B) that one (1) of the following is true:
>
> > (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.

(ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

(iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;

(C) that termination is in the best interests of the child; and

(D) that there is a satisfactory plan for the care and treatment of the child.

IND. CODE § 31-35-2-4(b)(2). DCS must prove the alleged circumstances by clear and convincing evidence. *K.T.K. v. Ind. Dep't of Child Servs.,* 989 N.E.2d 1225, 1230 (Ind. 2013).

[13] When reviewing a termination of parental rights, this Court will not reweigh the evidence or judge the credibility of the witnesses. *In re R.S.*, 56 N.E.3d 625, 628 (Ind. 2016). We consider only the evidence and any reasonable inferences to be drawn therefrom that support the judgment and give due regard to the trial court's opportunity to judge the credibility of the witnesses firsthand. *K.T.K.*, 989 N.E.2d at 1229.

[14] When the trial court's judgment contains specific findings of fact and conclusions thereon, we apply a two-tiered standard of review. *In re R.S.*, 56 N.E.3d at 628. First, we determine whether the evidence supports the findings, and second, we determine whether the findings support the judgment. *Id.* We will set aside a trial court's judgment terminating a parent-child relationship only if it is clearly erroneous. *Id.* Findings are clearly erroneous only when the record contains no facts or inferences to be drawn therefrom that support them.

*In re A.G.*, 6 N.E.3d 952, 957 (Ind. Ct. App. 2014). A judgment is clearly erroneous if the findings do not support the trial court's conclusions or the conclusions do not support the judgment. *Id.*

[15] As a preliminary matter, we note that Mother challenges none of the trial court's findings. As a result, she has waived any argument relating to whether these unchallenged findings are clearly erroneous. *See McMaster v. McMaster*, 681 N.E.2d 744, 747 (Ind. Ct. App. 1997) (explaining that unchallenged trial court findings were accepted as true). We now turn to the issue in this case.

[16] Mother's sole argument is that DCS failed to prove by clear and convincing evidence that there is insufficient evidence that the termination was in the children's best interests. In determining whether termination of parental rights is in the best interests of a child, the trial court is required to look at the totality of the evidence. *In re D.D.*, 804 N.E.2d 258, 267 (Ind. Ct. App. 2004), *trans. denied*. In so doing, the court must subordinate the interests of the parents to those of the child involved. *Id.* Termination of the parent-child relationship is proper where the child's emotional and physical development is threatened. *In re R.S.*, 774 N.E.2d 927, 930 (Ind. Ct. App. 2002), *trans. denied*. The trial court need not wait until the child is irreversibly harmed such that her physical, mental, and social development is permanently impaired before terminating the parent-child relationship. In addition, a child's need for permanency is a central consideration in determining the child's best interests. *In re G.Y.*, 904 N.E.2d 1257, 1265 (Ind. 2009). Further, the testimony of the service providers may support a finding that termination is in the child's best interests. *McBride v.*

*Monroe Cty. Office of Family and Children*, 798 N.E.2d 185, 203 (Ind. Ct. App. 2003).

[17] Here, our review of the evidence reveals that Mother failed to successfully complete the home-based services program as well as therapy. Her supervised visitation was suspended because she failed to demonstrate the ability to supervise her children. She also failed to obtain stable income or housing. In addition, the case manager and the CASA both testified that termination was in the children's best interests because they deserved stability and permanency. The testimony of these service providers, as well as the other evidence previously discussed, supports the trial court's conclusion that termination was in the children's best interests.

[18] We reverse a termination of parental rights "only upon a showing of 'clear error'—that which leaves us with a definite and firm conviction that a mistake has been made." *Egly v. Blackford Cty. Dep't of Pub. Welfare*, 592 N.E.2d 1232, 1235 (Ind. 1992). We find no such error here and therefore affirm the trial court.

[19] Affirmed.

May, J., and Brown, J., concur.