## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 13 2018, 9:26 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT, K.N.

Michael B. Troemel
Lafayette, Indiana

ATTORNEY FOR APPELLANT, R.O.

Kyle D. Gobel
Collier Gobel, Homann, LLC
Crawfordsville, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Katherine A. Cornelius
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In the Matter of the Termination of the Parent-Child Relationship of W.O.;<br><br>K.N. (Mother) and R.O. (Father),<br><br>*Appellants-Respondents,*<br><br>      v.<br><br>The Indiana Department of Child Services,<br><br>*Appellee-Petitioner.* | December 13, 2018<br><br>Court of Appeals Case No. 18A-JT-1545<br><br>Appeal from the Fountain Circuit Court<br><br>The Honorable Stephanie Campbell, Judge<br><br>Trial Court Cause No. 23C01-1711-JT-189 |

**Pyle, Judge.**

# Statement of the Case

K.N. ("Mother") and R.O. ("Father") each appeal the termination of the parent-child relationship with their daughter, W.O. ("W.O."), claiming that there is insufficient evidence to support the termination. Specifically, Mother and Father both argue that the Department of Child Services ("DCS") failed to prove by clear and convincing evidence that: (1) there is a reasonable probability that the conditions that resulted in W.O.'s removal or the reasons for placement outside the home will not be remedied; and (2) a continuation of the parent-child relationship poses a threat to W.O.'s well-being. Both parents also argue that DCS failed to prove that termination of the parent-child relationships is in W.O.'s best interests. Concluding that there is sufficient evidence to support the termination of the parent-child relationships, we affirm the trial court's judgment.

We affirm.

# Issue

The sole issue for our review is whether there is sufficient evidence to support the terminations.

# Facts

W.O. was born in June 2010. When Mother was stopped for speeding in 2015, five-year-old W.O. was in the car. Police officers found marijuana and paraphernalia in the car and arrested Mother. A subsequent report to DCS revealed that Mother and W.O. had been living in the car and that Father was

living in a tent by the river. W.O. was placed with paternal grandmother, and DCS filed a petition alleging that W.O. was a child in need of services ("CHINS"). Shortly after DCS filed this petition, Father was arrested and charged with possession of marijuana.

[4] In September 2015, the trial court adjudicated W.O. to be a CHINS and ordered both parents to complete substance abuse and parenting assessments and follow all recommendations. The parents were also ordered to abstain from the use of illegal drugs and to obtain a stable source of income as well as suitable housing.

[5] In March 2017, DCS allowed W.O. to return to Mother's home for a trial placement. Father was only allowed supervised visitation because he had failed to comply with the court's orders. Shortly after W.O.'s return to Mother's home, Mother stopped participating in court-ordered programs and refused to allow DCS or the court-appointed special advocate ("CASA") into her home to see W.O. In addition, Mother allowed Father to have unsupervised contact with W.O. After Mother tested positive for methamphetamine in July 2017, the trial court granted DCS' petition for emergency custody and authorized DCS to take W.O. into protective custody.

[6] In November 2017, DCS filed a petition to terminate the parental rights of both parents. At the February 2018 termination hearing, DCS Family Case Manager Angelina Brouillette ("FCM Brouillette") testified that Mother had failed to submit to eight drug screens in September and October 2017 and had

tested positive for methamphetamine and amphetamines in November 2017. In December 2017, Mother had refused to give a requested hair sample for a hair follicle drug test. FCM Brouillette testified that she was concerned about Mother's continued drug use. According to the case manager, Mother had not "been making any progress towards remedying the situation that led to [W.O.'s] removal." (Tr. 150).

[7] Regarding Father, FCM Brouillette testified that Father had tested positive for Spice in September 2017. The case manager further testified that Father had also refused to submit to drug screens from the end of September 2017 until the end of October 2017. He, like Mother, had then tested positive for methamphetamine and amphetamines in November 2017. According to FCM Brouillette, W.O.'s parents have never acknowledged that they have substance abuse problems or that they need help for them.

[8] FCM Brouillette further testified that termination was in W.O.'s best interest because neither parent had "made progress with the case plan." (Tr. 157). According to FCM Brouillette, W.O. had been living with her paternal grandmother for over two years and had bonded with her. The plan was for grandmother to adopt W.O.

[9] CASA Audrey Hayman ("CASA Hayman") also testified that termination was in W.O.'s best interest because W.O. needed stability and permanency. Specifically, CASA Hayman explained as follows regarding W.O.: "She needs to be safe and she needs to be able to thrive in her environment and, again, we

can't - - we can't hit a pause button on a child to wait for parents to get their act together." (Tr. 226).

[10] In June 2018, the trial court issued a thirteen-page order terminating both parents' parental rights. Each parent separately appeals the terminations.

# Decision

[11] The traditional right of parents to establish a home and raise their children is protected by the Fourteenth Amendment to the United States Constitution. *In re J.W., Jr.*, 27 N.E.3d 1185, 1187-88 (Ind. Ct. App. 2015), *trans. denied*. However, a trial court must subordinate the interests of the parents to those of the child when evaluating the circumstances surrounding a termination. *Id.* at 1188. Termination of the parent-child relationship is proper where a child's emotional and physical development is threatened. *Id.* Although the right to raise one's own child should not be terminated solely because there is a better home available for the child, parental rights may be terminated when a parent is unable or unwilling to meet his or her parental responsibilities. *Id.*

[12] Before an involuntary termination of parental rights may occur, DCS is required to allege and prove, among other things:

> (B) that one (1) of the following is true:
>
>> (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.

> > (ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.
>
> > (iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;
>
> (C) that termination is in the best interests of the child; and
>
> (D) that there is a satisfactory plan for the care and treatment of the child.

IND. CODE § 31-35-2-4(b)(2). DCS must prove the alleged circumstances by clear and convincing evidence. *K.T.K. v. Ind. Dep't of Child Servs.,* 989 N.E.2d 1225, 1230 (Ind. 2013).

[13] When reviewing a termination of parental rights, this Court will not reweigh the evidence or judge the credibility of the witnesses. *In re R.S.*, 56 N.E.3d 625, 628 (Ind. 2016). We consider only the evidence and any reasonable inferences to be drawn therefrom that support the judgment and give due regard to the trial court's opportunity to judge the credibility of the witnesses firsthand. *K.T.K.*, 989 N.E.2d at 1229.

[14] When the trial court's judgment contains specific findings of fact and conclusions thereon, we apply a two-tiered standard of review. *In re R.S.*, 56 N.E.3d at 628. First, we determine whether the evidence supports the findings, and second, we determine whether the findings support the judgment. *Id.* We will set aside a trial court's judgment terminating a parent-child relationship only if it is clearly erroneous. *Id.* Findings are clearly erroneous only when the record contains no facts or inferences to be drawn therefrom that support them.

*In re A.G.*, 6 N.E.3d 952, 957 (Ind. Ct. App. 2014). A judgment is clearly erroneous if the findings do not support the trial court's conclusions or the conclusions do not support the judgment. *Id.*

[15] Mother and Father first argue that DCS failed to prove by clear and convincing evidence that: (1) there is a reasonable probability that the conditions that resulted in W.O.'s removal or the reasons for placement outside the home will not be remedied; and (2) a continuation of the parent-child relationship poses a threat to the W.O.'s well-being. However, we note that INDIANA CODE § 31-35-2-4(b)(2)(B) is written in the disjunctive. Therefore, DCS is required to establish by clear and convincing evidence only one of the three requirements of subsection (B). *In re A.K.,* 924 N.E.3d 212, 220 (Ind. Ct. App. 2010), *trans. dismissed*. We therefore discuss only whether there is a reasonable probability that the conditions that resulted in W.O.'s removal or the reasons for her placement outside the home will not be remedied.

[16] In determining whether the conditions that resulted in a child's removal or placement outside the home will not be remedied, we engage in a two-step analysis. *In re E.M.,* 4 N.E.3d 636, 643 (Ind. 2014). We first identify the conditions that led to removal or placement outside the home and then determine whether there is a reasonable probability that those conditions will not be remedied. *Id.* The second step requires trial courts to judge a parent's fitness at the time of the termination proceeding, taking into consideration evidence of changed conditions and balancing any recent improvements against habitual patterns of conduct to determine whether there is a substantial

probability of future neglect or deprivation. *Id.* Habitual conduct may include a parent's prior criminal history, drug and alcohol abuse, history of neglect, failure to provide support, and a lack of adequate housing and employment. *A.D.S. v. Ind. Dep't of Child Servs.*, 987 N.E.2d 1150, 1157 (Ind. Ct. App. 2013), *trans. denied.* The trial court may also consider services offered to the parent by DCS and the parent's response to those services as evidence of whether conditions will be remedied. *Id.* Requiring trial courts to give due regard to changed conditions does not preclude them from finding that a parent's past behavior is the best predictor of her future behavior. *E.M.*, 4 N.E.3d at 643.

[17] Here, our review of the evidence reveals that W.O. was removed from Mother because of Mother's drug use and unstable housing. W.O. could not be placed with Father at that time because of his unstable housing and subsequent drug-related arrest. Although DCS allowed W.O. to return to Mother' home for a trial placement in March 2017, shortly thereafter, Mother stopped participating in court-ordered programs and refused to allow DCS case managers or the CASA to see W.O. Mother also allowed Father, who was only allowed supervised visitation with W.O, to have unsupervised contact with his daughter. In July 2017, Mother tested positive for methamphetamine, and DCS removed W.O. from her home. Father tested positive for Spice in September 2017, and both Mother and Father refused to submit to drug screens from the end of September through the end of October. They both also tested positive for amphetamines and methamphetamine in November 2017, just three months before the termination hearing. Both parents have refused to

acknowledge and treat the substance abuse problems that led to the removal of their daughter. This evidence supports the trial court's conclusion that there was a reasonable probability that the conditions that resulted in W.O.'s removal would not be remedied. We find no error.

[18] Next, Mother and Father both argue that there is insufficient evidence that the termination was in W.O.'s best interests. In determining whether termination of parental rights is in the best interests of a child, the trial court is required to look at the totality of the evidence. *In re D.D.*, 804 N.E.2d 258, 267 (Ind. Ct. App. 2004), *trans. denied*. In so doing, the court must subordinate the interests of the parents to those of the child involved. *Id.* Termination of the parent-child relationship is proper where the child's emotional and physical development is threatened. *In re R.S.*, 774 N.E.2d 927, 930 (Ind. Ct. App. 2002), *trans. denied*. The trial court need not wait until the child is irreversibly harmed such that his physical, mental, and social development is permanently impaired before terminating the parent-child relationship. In addition, a child's need for permanency is a central consideration in determining the child's best interests. *In re G.Y.*, 904 N.E.2d 1257, 1265 (Ind. 2009). Further, the testimony of the service providers may support a finding that termination is in the child's best interests. *McBride v. Monroe Cnty. Office of Family and Children*, 798 N.E.2d 185, 203 (Ind. Ct. App. 2003).

[19] Here, our review of the evidence reveals that FCM Brouillette and CASA Hayman both testified that termination was in W.O.'s best interests because she needed stability and permanency. W.O. has lived with paternal grandmother

for more than two years and has bonded with her. The plan is for paternal grandmother to adopt W.O., who should not have to wait any longer for her parents to acknowledge and seek treatment for their drug problems. The testimony of these service providers, as well as the other evidence previously discussed, supports the trial court's conclusion that termination was in W.O.'s best interests.

[20] We reverse a termination of parental rights "only upon a showing of 'clear error'—that which leaves us with a definite and firm conviction that a mistake has been made." *Egly v. Blackford Cty. Dep't of Pub. Welfare*, 592 N.E.2d 1232, 1235 (Ind. 1992). We find no such error here and therefore affirm the trial court.

[21] Affirmed.

Najam, J., and Crone, J., concur.