## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Apr 30 2019, 11:23 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Daniel G. Foote
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Abigail R. Recker
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In the Matter of the Termination of the Parent-Child Relationship of J.P. and M.B. (Minor Children);<br><br>C.B. (Mother),<br><br>*Appellant-Respondent,*<br><br>v.<br><br>Indiana Department of Child Services,<br><br>*Appellee-Petitioner.* | April 30, 2019<br><br>Court of Appeals Case No. 18A-JT-390<br><br>Appeal from the Marion Superior Court<br><br>The Honorable Marilyn A. Moores, Judge<br><br>The Honorable Scott B. Stowers, Magistrate<br><br>Trial Court Cause Nos. 49D09-1702-JT-183 49D09-1702-JT-184 |

**Najam, Judge.**

# Statement of the Case

C.B. ("Mother") appeals the juvenile court's termination of her parental rights over her minor children, J.P. and M.B. ("Children"). Mother[1] raises a single issue for our review, which we restate as the following three issues:

    1.    Whether the juvenile court erred when it concluded that the conditions that resulted in the Children's removal from Mother's care would not be remedied.

    2.    Whether termination of Mother's parental rights was in the Children's best interests.

    3.    Whether there is a satisfactory plan for the care and treatment of the Children.

We affirm.

# Facts and Procedural History

Mother has two children: J.P., born on June 16, 2005; and M.B., born on October 3, 2006. In February 2013, the Indiana Department of Child Services ("DCS") received a report that Mother's home had no heat, no running water, and a broken refrigerator, and that there was human feces in the bathroom. Mother was arrested for child neglect, and the Children were removed from her care. On February 27, DCS filed petitions alleging that the Children were Children in Need of Services ("CHINS"). After a hearing, the court

---

[1] The Children's fathers do not join this appeal.

adjudicated the Children to be CHINS, and on May 28, the juvenile court entered its dispositional order and instructed Mother to participate in home based counseling and to submit to random drug screens.

[4] Mother initially complied with the dispositional order and exercised unsupervised visitation with the Children. However, in April 2015, Mother was involved in a "domestic disturbance" with a man in the Children's presence. Tr. at 13. Accordingly, on April 28, the juvenile court temporarily suspended Mother's visitation and later reinstated it, but only under the supervision of Kelsey Middaugh, a family consultant with Lifeline Youth and Family Services. During the ensuing five months, Mother cancelled four supervised visits with the Children, and she ended seven of the visits early. Middaugh had warned that ending visits early would cause Middaugh to "close out" the supervised visitation services. *Id.* at 74. Despite that warning, Mother ended an October visit early, and Middaugh closed out Mother's services.

[5] After the domestic disturbance, DCS recommended that Mother submit to a domestic violence assessment, and she complied. Penny Carter with Branches of Life completed the assessment and recommended that Mother participate in domestic violence education. Mother completed the program, but Carter found Mother to be "combative" and described Mother as trying to convince Carter that Mother was not a victim. *Id.* at 65.

[6] Mother proceeded to visit Children at maternal grandmother's house, where they had been placed. But Mother ceased visitations with the Children in July

2016. Mother perceived that maternal grandmother had "sabotaged" her attempts to see the Children. *Id.* at 17.

[7] During the course of the CHINS proceeding, Mother had lived at eight different residences, at least four of which were unsuitable for the Children. In January 2017, the juvenile court held a permanency hearing, and Mother claimed that she had recently leased an apartment. Mother presented the court with photographs of the apartment. Mother also told the court that she had a valid driver's license. Shortly after that hearing, the court learned that Mother had lied both about the apartment, which was not really her residence, and the validity of her driver's license. In February, DCS filed petitions to terminate Mother's parental rights over the Children.

[8] On December 13, the court held a fact-finding termination hearing. Thereafter, in January 2018, the court entered the following findings of fact and conclusions of law:

> 20. There is a reasonable probability that the conditions that resulted in the [C]hildren's removal and continued placement outside of the home will not be remedied by their [M]other. [Mother] has had nearly five (5) years to comply with services and has not done so. No service provider has recommended that the [C]hildren be returned to the care of their [M]other. [Mother] has not completed services and little to no progress has been made toward reunification. [Mother] does not have stable housing or employment. Furthermore, she attempted a fraud upon the CHINS court by submitting a false lease agreement and fake photographs of what she represented as her home.

21. Continuation of the parent-child relationship[s] poses a threat to the [C]hildren's well-being in that it would serve as a barrier for them obtaining permanency through an adoption when their [M]other hasn't demonstrated that she can provide stability and parent. She has not seen the [C]hildren since July 2016. As recently as the December 13, 2017[,] Termination Trial, [Mother] didn't even know the ages of her [C]hildren. In nearly five years, [Mother] has been unable to provide a safe and stable home for her children.

22. Termination of the parent-child relationship[s] is in the best interests of the [C]hildren. Termination would allow them to be adopted into a stable and permanent home where their needs would be safely met.

23. There exists a satisfactory plan for the future care and treatment of the [C]hildren, that being adoption.

24. The Guardian ad Litem agrees with the permanency plan of adoption as being in the [C]hildren's best interests.

Appellant's App. Vol. 2 at 51. In light of its findings and conclusions, the court ordered the termination of Mother's parental rights. This appeal ensued.[2]

---

[2] Mother timely filed a notice of appeal, *pro se*, on February 8, 2018. On August 28, this Court remanded to the juvenile court because the record was not clear as to whether the court had advised Mother that she had the right to appellate counsel. Thereafter, the juvenile court appointed appellate counsel for Mother, and on November 19, she filed her amended notice of appeal.

# Discussion and Decision

## *Overview*

We begin our review of this appeal by acknowledging that "[t]he traditional right of parents to establish a home and raise their children is protected by the Fourteenth Amendment of the United States Constitution." *Bailey v. Tippecanoe Div. of Fam. & Child. (In re M.B.)*, 666 N.E.2d 73, 76 (Ind. Ct. App. 1996), *trans. denied*. However, a juvenile court must subordinate the interests of the parents to those of the child when evaluating the circumstances surrounding a termination. *Schultz v. Porter Cty. Off. of Fam. & Child. (In re K.S.)*, 750 N.E.2d 832, 837 (Ind. Ct. App. 2001). Termination of a parent-child relationship is proper where a child's emotional and physical development is threatened. *Id.* Although the right to raise one's own child should not be terminated solely because there is a better home available for the child, parental rights may be terminated when a parent is unable or unwilling to meet his or her parental responsibilities. *Id.* at 836.

Before an involuntary termination of parental rights can occur in Indiana, DCS is required to allege and prove:

> (B) that one (1) of the following is true:
>
> (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.

(ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

\* \* \*

(C) that termination is in the best interests of the child; and

(D) that there is a satisfactory plan for the care and treatment of the child.

Ind. Code § 31-35-2-4(b)(2) (2018). DCS's "burden of proof in termination of parental rights cases is one of 'clear and convincing evidence.'" *R.Y. v. Ind. Dep't of Child Servs. (In re G.Y.)*, 904 N.E.2d 1257, 1260-61 (Ind. 2009) (quoting I.C. § 31-37-14-2).

[11] When reviewing a termination of parental rights, we will not reweigh the evidence or judge the credibility of the witnesses. *Peterson v. Marion Cty. Off. of Fam. & Child. (In re D.D.)*, 804 N.E.2d 258, 265 (Ind. Ct. App. 2004), *trans. denied*. Instead, we consider only the evidence and reasonable inferences that are most favorable to the judgment. *Id.* Moreover, in deference to the juvenile court's unique position to assess the evidence, we will set aside the court's judgment terminating a parent-child relationship only if it is clearly erroneous. *Judy S. v. Noble Cty. Off. of Fam. & Child. (In re L.S.)*, 717 N.E.2d 204, 208 (Ind. Ct. App. 1999), *trans. denied*.

[12] Here, in terminating Mother's parental rights, the juvenile court entered findings of fact and conclusions thereon following an evidentiary hearing.

When a juvenile court's judgment is based on such findings and conclusions, we apply a two-tiered standard of review. *Bester v. Lake Cty. Off. of Fam. & Child.*, 839 N.E.2d 143, 147 (Ind. 2005). First, we determine whether the evidence supports the findings, and, second, we determine whether the findings support the judgment. *Id.* "Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference." *Quillen v. Quillen*, 671 N.E.2d 98, 102 (Ind. 1996). If the evidence and inferences support the juvenile court's decision, we must affirm. *In re L.S.*, 717 N.E.2d at 208.

[13] On appeal, Mother contends that the juvenile court erred when it concluded that: the conditions that resulted in the Children's removal will not be remedied; the continuation of the parent-child relationships poses a threat to the Children's well-being; termination is in the Children's best interests; and there is a satisfactory plan for the care and treatment of the Children. However, as Indiana Code Section 31-35-2-4(b)(2)(B) is written in the disjunctive, we need not address Mother's contention that the continuation of the parent-child relationships poses a threat to the Children's well-being.

### Issue One: Failure to Remedy

[14] We first address the juvenile court's conclusion that there is a reasonable probability that the conditions that resulted in the Children's removal or the reasons for placement outside Mother's home will not be remedied. In determining whether the conditions that led to a child's placement outside the home will not be remedied, a juvenile court is required to (1) ascertain what

conditions led to the child's removal or placement and retention outside the home; and (2) determine whether there is a reasonable probability that those conditions will not be remedied. *R.C. v. Ind. Dep't of Child Servs. (In re K.T.K.)*, 989 N.E.2d 1225, 1231 (Ind. 2013). Here, the juvenile court found that DCS had removed the Children from Mother's home and placed them in foster care because of Mother's lack of suitable housing and her neglect of the Children.

[15] In order to determine whether there is a reasonable probability that the conditions that resulted in removal will not be remedied, the juvenile court should assess a parent's "fitness" at the time of the termination hearing, taking into consideration any evidence of changed conditions. *E.M. v. Ind. Dep't of Child Servs. (In re E.M.)*, 4 N.E.3d 636, 643 (Ind. 2014). The court must weigh any improvements the parent has made since removal against the parent's "habitual patterns of conduct to determine whether there is a substantial probability of future neglect or deprivation." *Id*. When making such decisions, juvenile courts should consider evidence of a "parent's prior criminal history, drug and alcohol abuse, history of neglect, failure to provide support, lack of adequate housing, and employment." *Evans v. St. Joseph Cty. Off. of Fam. & Child. (In re A.L.H.)*, 774 N.E.2d 896, 990 (Ind. Ct. App. 2002).

[16] The juvenile court found that, over the course of the almost five years after the Children's removal from Mother's care: Mother's participation in visitation with the Children was inconsistent, and Mother stopped visiting the Children in July 2016; Mother lived in eight different homes, including an apartment infested with bedbugs, and she failed to show that she had suitable housing at

the time of the factfinding hearing; Mother lied to the juvenile court about having found suitable housing and about having a valid driver's license; and Mother refused to participate in home based case management. Accordingly, we cannot say that the juvenile court erred when it concluded that there is a reasonable probability that the conditions that resulted in the Children's removal or the reasons for placement outside Mother's home will not be remedied.[3]

### Issue Two: Children's Best Interests

[17]   Mother also asserts that the juvenile court clearly erred when it concluded that termination of her parental rights is in the Children's best interests. In determining what is in a child's best interests, a juvenile court is required to look beyond the factors identified by DCS and consider the totality of the evidence. *A.S. v. Ind. Dep't of Child Servs. (In re A.K.)*, 924 N.E.2d 212, 223 (Ind. Ct. App. 2010). A parent's historical inability to provide "adequate housing, stability, and supervision," in addition to the parent's current inability to do so, supports finding termination of parental rights is in the best interests of the child. *Id.*

---

[3] To the extent Mother contends that the court's termination order is clearly erroneous because DCS did not offer her adequate services during the CHINS proceeding aimed at finding suitable housing, that contention is without merit. DCS presented evidence that it offered Mother home based case management services to find suitable housing, and Mother refused that assistance. In any event, as DCS points out, our courts have "long recognized that, in 'seeking termination of parental rights,' the DCS has no obligation 'to plead and prove that services have been offered to the parent to assist in fulfilling parental obligations.'" *T.D. v. Ind. Dep't of Child Servs. (In re J.W.)*, 27 N.E.3d 1185, 1190 (Ind. Ct. App. 2015) (quoting *S.E.S. v. Grant Cty. Dep't of Welfare*, 594 N.E.2d 447, 448 (Ind. 1992)), *trans. denied*.

[18] When making its decision, the court must subordinate the interests of the parents to those of the child. *See Stewart v. Ind. Dep't of Child Servs. (In re J.S.)*, 906 N.E.2d 226, 236 (Ind. Ct. App. 2009). "The court need not wait until a child is irreversibly harmed before terminating the parent-child relationship." *Id*. Moreover, this Court has previously held that recommendations of the family case manager and court-appointed advocate to terminate parental rights, coupled with evidence that the conditions resulting in removal will not be remedied, are sufficient to show by clear and convincing evidence that termination is in the child's best interests. *Id*.

[19] Here, again, Mother has not seen the Children since July 2016, and she has not had suitable or stable housing since the CHINS petitions were filed in 2013. DCS offered Mother assistance in finding a suitable home, but Mother rejected it. And, while Mother completed domestic violence education, she did not admit that she had been a victim of domestic violence. The Children are thriving in their placement with maternal grandmother. The Guardian ad Litem ("GAL") testified that termination was in the Children's best interests because maternal grandmother has "given them permanency." Tr. at 119. Given the totality of the evidence, including the GAL's testimony, Mother cannot show that the juvenile court erred when it concluded that termination of her rights was in the Children's best interests.

### Issue Three: Satisfactory Plan

[20] Finally, Mother contends that the juvenile court clearly erred when it concluded that DCS had a satisfactory plan for the care and treatment of the Children.

Indiana courts have traditionally held that for a plan to be satisfactory, for the purposes of the termination statute, it need not be detailed, so long as it offers a general sense of the direction in which the child will be going after the parent-child relationship is terminated. *K.W. v. Ind. Dep't of Child Servs. (In re A.S.)*, 17 N.E.3d 994, 1007 (Ind. Ct. App. 2014) (citation omitted), *trans. denied*. A DCS plan is satisfactory if the plan is to attempt to find suitable parents to adopt the children. *Id.* Here, DCS presented evidence that the Children's maternal grandmother, with whom they have lived for several years, plans to adopt them.

[21] Mother contends that the plan for her mother to adopt the Children is not satisfactory because, she asserts, maternal grandmother has mental health issues and will not let Mother see the Children. But Mother ignores the evidence that the Children are thriving in maternal grandmother's care. Mother's contentions on this issue amount to a request that we reweigh the evidence, which we cannot do. We hold the juvenile court did not err when it concluded that DCS' plan of adoption was satisfactory.

[22] In sum, we affirm the juvenile court's termination of Mother's parental rights over the Children.

[23] Affirmed.

Baker, J., and Robb, J., concur.