## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Oct 10 2018, 10:53 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Jillian C. Keating
Coots, Henke & Wheeler, P.C.
Carmel, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Abigail R. Recker
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In Re: the Termination of the
Parent-Child Relationship of:
Ka.A., Ke.A., T.A., and L.K.;

D.A. (Father)

*Appellant-Defendant,*

v.

Indiana Department of Child
Services,

*Appellee-Plaintiff.*

October 10, 2018

Court of Appeals Case No.
18A-JT-860

Appeal from the Hamilton Circuit
Court

The Honorable Paul A. Felix,
Judge

Trial Court Cause No.
29C01-1709-JT-1200
29C01-1709-JT-1201
29C01-1709-JT-1202
29C01-1709-JT-1203

**Pyle, Judge.**

## Statement of the Case

[1] D.A. ("Father") appeals the termination of the parent-child relationship with his children T.A. ("T.A."), Ka.A. ("Ka.A."), Ke.A. ("Ke.A."), and L.K. ("L.K.") (collectively "the children").[1] He contends that there is insufficient evidence to support the terminations. Specifically, Father argues that the Department of Child Services ("DCS") failed to prove by clear and convincing evidence that: (1) there is a reasonable probability that the conditions that resulted in the children's removal or the reasons for placement outside the home will not be remedied; (2) a continuation of the parent-child relationship poses a threat to the children's well-being; and (3) termination of the parent-child relationship is in the children's best interests. Concluding that there is sufficient evidence to support the termination of the parent-child relationships, we affirm the trial court's judgment.

[2] We affirm.

## Issue

The sole issue for our review is whether there is sufficient evidence to support the terminations.

---

[1] The children's mother ("Mother") voluntarily terminated her parental rights at the termination hearing and is not a party to this appeal.

## Facts

Father is the parent of T.A., who was born in October 2008; Ka.A., who was born in January 2011; Ke.A., who was born in May 2012; and L.K., who was born in October 2016. In December 2015, T.A., Ka.A, and Ke.A were removed from their parents' home because drug paraphernalia, easily accessible to the children, was found in the home. Both parents also admitted using illegal substances, such as heroin, when the children were in the home. The parents' home was also found to be unsuitable for children.

Also in December 2015, following the children's removal, Father participated in a Salvation Army drug detoxification program. He was then referred to an inpatient substance abuse treatment program at Southwestern Behavioral Health. Father began the program but left it against medical advice before successfully completing it.

The three children, who had been placed in foster care with their paternal uncle and his wife, were adjudicated to be children in need of services ("CHINS") in February 2016. The CHINS dispositional decree ordered Father to: (1) complete a parenting assessment and successfully complete all recommendations; (2) complete a substance abuse assessment and successfully complete all recommendations; (3) remain drug free and submit to random drug screens; (4) attend supervised visitation with the children; (5) obtain and maintain stable housing; and (6) obtain and maintain stable employment.

[6] In March 2016, Father completed substance abuse and parenting assessments. At the time of the assessments, Father was homeless and "living with friends and [] in and out of hotels." (Ex. Vol. 4 at 115). He admitted that he was addicted to heroin. In April 2016, Father was referred to two programs to address his substance abuse issues, but he did not attend either program. Two months later, in June 2016, while the CHINS case was pending, Father committed Level 4 felony burglary of a dwelling and Level 6 felony theft. He was charged with the offenses and incarcerated in the Hamilton County jail in July 2016.

[7] Father's fourth child, L.K., was born in October 2016. At the time of his birth, both L.K. and Mother tested positive for amphetamines. L.K. was placed with his sisters in foster care and adjudicated to be a CHINS in December 2016. In January 2017, Father pled guilty to the Level 4 felony and was sentenced to eight years in the Indiana Department of Correction, where he was placed in the Purposeful Incarceration Program.

[8] In September 2017, DCS filed petitions to terminate Father's parental relationships with his four children. At the January 2018 termination hearing, DCS Family Case Manager Marshall Despain ("Case Manager Despain") testified that although Father had completed a parenting assessment, Father had never been able to show that he had "improved his overall ability to ensure that the children w[ould] be safe in his care." (Tr. 91). Case Manager Despain further testified that the children had been removed from Father because of

unsafe housing and Father's drug use. According to the case manager, "those [were] still issues" for Father at the time of his incarceration. (Tr. 94).

[9] DSC Family Case Manger Mary Catherine Driggers ("Case Manager Driggers") testified that she was concerned that once Father was "no longer incarcerated, he would not choose to maintain that sobriety because he did not, he was not able to maintain sobriety when he did have access to the outside world where he could obtain those illegal substances." (Tr. 98-99). Case Manager Driggers further testified that Father's three oldest children had not had any contact with Father since his July 2016 arrest, which was eighteen months before the termination hearing. Father had never had physical contact with his youngest child, L.K., who was fifteen months old at the time of the termination hearing. According to Case Manager Driggers, adoption was in the children's best interests because the children needed to know "that they [were] safe, stable, and they [were] going to have a permanent home until they bec[a]me adults." (Tr. 104).

[10] The children's foster mother ("Foster Mother") testified that although the older children were developmentally delayed when they arrived at the foster home, at the time of the termination hearing, T.A. was in the second highest reading level in her class, and the other two girls had "done really well in adjusting." (Tr. 125). All of the girls were involved in extracurricular activities, such as soccer, gymnastics, and volleyball. Foster Mother further testified that she and her husband wanted to adopt all four children. She specifically explained that although they had "thought this was going to be temporary[, they] just couldn't

imagine the children not being a part of the family or being lost somewhere or –
so that's just what [they] want[ed] to do." (Tr. 126).

[11] Guardian Ad Litem Casandra Nelson ("GAL Nelson") testified that the children were removed from both parents because of substance abuse issues and unsuitable housing. When asked whether Father had made any progress addressing these issues, GAL Nelson responded as follows: "Prior to being incarcerated I know he had made little, if any, progress and was still testing positive for substances. At this point he is still incarcerated and I believe his earliest release date is 2021." (Tr. 117-18). GAL Nelson further testified that termination was in the children's best interests because the children had already been removed from their home for more than two years and they "need[ed] a stable, loving, permanent home to grow up in." (Tr. 118). According to GAL Nelson, she had visited the children in their foster home, and the "home [wa]s a good environment for them. It [was] appropriate and the children appear[ed] to be doing very well in that environment." (Tr. 119).

[12] In March 2018, the trial court issued orders terminating Father's parental relationships with his four children. Father now appeals.

## Decision

[13] The traditional right of parents to establish a home and raise their children is protected by the Fourteenth Amendment to the United States Constitution. *In re J.W., Jr.*, 27 N.E.3d 1185, 1187-88 (Ind. Ct. App. 2015), *trans. denied*. However, a trial court must subordinate the interests of the parents to those of

the child when evaluating the circumstances surrounding a termination. *Id.* at 1188. Termination of the parent-child relationship is proper where a child's emotional and physical development is threatened. *Id.* Although the right to raise one's own child should not be terminated solely because there is a better home available for the child, parental rights may be terminated when a parent is unable or unwilling to meet his or her parental responsibilities. *Id.*

[14] Before an involuntary termination of parental rights may occur, DCS is required to allege and prove, among other things:

> (B) that one (1) of the following is true:
>
>> (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
>>
>> (ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.
>>
>> (iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;
>
> (C) that termination is in the best interests of the child; and
>
> (D) that there is a satisfactory plan for the care and treatment of the child.

IND. CODE § 31-35-2-4(b)(2). DCS must prove the alleged circumstances by clear and convincing evidence. *K.T.K. v. Ind. Dep't of Child Servs.,* 989 N.E.2d 1225, 1230 (Ind. 2013).

[15]     When reviewing a termination of parental rights, this Court will not reweigh the evidence or judge the credibility of the witnesses. *In re R.S.*, 56 N.E.3d 625, 628 (Ind. 2016). We consider only the evidence and any reasonable inferences to be drawn therefrom that support the judgment and give due regard to the trial court's opportunity to judge the credibility of the witnesses firsthand. *K.T.K.*, 989 N.E.2d at 1229.

[16]     When the trial court's judgment contains specific findings of fact and conclusions thereon, we apply a two-tiered standard of review. *In re R.S.*, 56 N.E.3d at 628. First, we determine whether the evidence supports the findings, and second, we determine whether the findings support the judgment. *Id.* We will set aside a trial court's judgment terminating a parent-child relationship only if it is clearly erroneous. *Id.* Findings are clearly erroneous only when the record contains no facts or inferences to be drawn therefrom that support them. *In re A.G.*, 6 N.E.3d 952, 957 (Ind. Ct. App. 2014). A judgment is clearly erroneous if the findings do not support the trial court's conclusions or the conclusions do not support the judgment. *Id.*

[17]     Father argues that DCS failed to prove by clear and convincing evidence that: (1) there is a reasonable probability that the conditions that resulted in the children's removal or the reasons for placement outside the home will not be remedied; and (2) a continuation of the parent-child relationship poses a threat to the children's well-being. However, we note that INDIANA CODE § 31-35-2-4(b)(2)(B) is written in the disjunctive. Therefore, DCS is required to establish by clear and convincing evidence only one of the three requirements of

subsection (B). *In re A.K.,* 924 N.E.2d 212, 220 (Ind. Ct. App. 2010), *trans. dismissed.* We therefore discuss only whether there is a reasonable probability that the conditions that resulted in the children's removal or the reasons for their placement outside the home will not be remedied.

[18] In determining whether the conditions that resulted in a child's removal or placement outside the home will not be remedied, we engage in a two-step analysis. *In re E.M.,* 4 N.E.3d 636, 643 (Ind. 2014). We first identify the conditions that led to removal or placement outside the home and then determine whether there is a reasonable probability that those conditions will not be remedied. *Id.* The second step requires trial courts to judge a parent's fitness at the time of the termination proceeding, taking into consideration evidence of changed conditions and balancing any recent improvements against habitual patterns of conduct to determine whether there is a substantial probability of future neglect or deprivation. *Id.* Habitual conduct may include parents' prior criminal history, drug and alcohol abuse, history of neglect, failure to provide support, and a lack of adequate housing and employment. *A.D.S. v. Ind. Dep't of Child Servs.*, 987 N.E.2d 1150, 1157 (Ind. Ct. App. 2013), *trans. denied.* The trial court may also consider services offered to the parent by DCS and the parent's response to those services as evidence of whether conditions will be remedied. *Id.*

[19] Here, our review of the evidence reveals that the children were removed from the parents' home because of unsuitable home conditions and Father's drug use. Evidence at the termination hearing revealed that Father had attended

both substance abuse and parenting assessments in March 2016 and had admitted that he was addicted to heroin. However, he had failed to attend either of the substance abuse programs to which he had been referred. In addition, at the time of the assessments, Father was homeless. Two months after completing the assessments, during the pendency of the CHINS proceedings, Father committed a felony, which led to an eight-year prison sentence. Father's earliest possible release date is 2021. We further note that, at the time of the termination hearing, Father had not had any contact with his three oldest children in eighteen months, and he had never had any physical contact with his youngest child. This evidence supports the trial court's conclusion that there was a reasonable probability that the conditions that resulted in the children's removal would not be remedied. We find no error.

[20] Father also argues that there is insufficient evidence that the termination was in the children's best interests. In determining whether termination of parental rights is in the best interests of a child, the trial court is required to look at the totality of the evidence. *In re D.D.*, 804 N.E.2d 258, 267 (Ind. Ct. App. 2004), *trans. denied*. In so doing, the court must subordinate the interests of the parents to those of the child involved. *Id.* Termination of the parent-child relationship is proper where the child's emotional and physical development is threatened. *In re R.S.*, 774 N.E.2d 927, 930 (Ind. Ct. App. 2002), *trans. denied*. "'A parent's historical inability to provide adequate housing, stability and supervision coupled with a current inability to provide the same will support a finding that continuation of the parent-child relationship is contrary to the child's best

interest.'" *In re B.D.J.*, 728 N.E.2d 195, 203 (Ind. Ct. App. 2000) (quoting *Matter of Adoption of D.V.H.*, 604 N.E.2d 634, 638 (Ind. Ct. App. 1992), *trans. denied, superseded by rule on other grounds*). Further, the testimony of the service providers may support a finding that termination is in the child's best interests. *McBride v. Monroe Cty. Office of Family and Children*, 798 N.E.2d 185, 203 (Ind. Ct. App. 2003).

[21] Here, our review of the evidence reveals that Father has historically been unable to provide housing, stability, and supervision for his children and was unable to provide the same at the time of the termination hearing. In addition, GAL Nelson testified that termination was in the children's best interests. The testimony of this service provider, as well as the other evidence previously discussed, supports the trial court's conclusion that termination was in the children's best interests.

[22] We reverse a termination of parental rights "only upon a showing of 'clear error'—that which leaves us with a definite and firm conviction that a mistake has been made." *Egly v. Blackford Cty. Dep't of Pub. Welfare*, 592 N.E.2d 1232, 1235 (Ind. 1992). We find no such error here and therefore affirm the trial court.

[23] Affirmed.

Najam, J., and Crone, J., concur.