## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jan 30 2019, 7:42 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR
APPELLANT/FATHER

Kyle K. Dugger
Bloomington, Indiana

ATTORNEY FOR
APPELLANT/MOTHER

Karen E. Wrenbeck
Bloomington, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

David E. Corey
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of the Termination of the Parent-Child Relationship of Ay.H., Ar.H., and C.B. (Minor Children);

S.B. (Father) and R.H. (Mother),

*Appellants-Respondents,*

v.

The Indiana Department of Child Services,

*Appellee-Petitioner.*

January 30, 2019

Court of Appeals Case No.
18A-JT-1119

Appeal from the Monroe Circuit Court

The Honorable Kelsey B. Hanlon, Special Judge

Trial Court Cause Nos.
53C07-1701-JT-43
53C07-1701-JT-44
53C07-1701-JT-45

**Pyle, Judge.**

## Statement of the Case

R.H. ("Mother") and S.B. ("Father") each appeal the termination of the parent-child relationship with their child C.B. ("C.B."). Mother also appeals the termination of the parent-child relationships with her older children Ay.H. ("Ay.H.") and Ar.H. ("Ar.H."). Both parents claim that there is insufficient evidence to support the terminations. Specifically, both parents argue that the Department of Child Services ("DCS") failed to prove by clear and convincing evidence that: (1) there is a reasonable probability that the conditions that resulted in the children's removal or the reasons for placement outside the home will not be remedied; and (2) termination of the parent-child relationship is in the children's best interests. Father also argues that the trial court abused its discretion when it denied his motion to continue the termination hearing. Concluding that the trial court did not abuse its discretion in denying Father's motion to continue the termination hearing and that there is sufficient evidence to support the termination of the parent-child relationships, we affirm the trial court's judgment.

We affirm.

## Issue

1. Whether the trial court abused its discretion in denying Father's motion to continue the termination hearing.

2. Whether there is sufficient evidence to support the termination of the parent-child relationships.

# Facts

The facts most favorable to the judgment reveal that Mother is the parent of twin daughters Ay.H. and Ar.H., who were born in 2008 and son C.B., who was born in 2010.[1] Father is the parent of C.B. Father was incarcerated in 2012 following his convictions for felony burglary and theft.

In September 2015, Mother failed to pick up the children after school. School officials were unable to reach her so they contacted DCS. When a DCS case worker spoke with Mother by telephone the following day, the case worker advised Mother that her children had been placed in foster care. Mother, who was in the psychiatric unit at a Bloomington hospital, was very emotional on the phone. Mother explained that she "had had what she called a mental breakdown due to [] being homeless and reported that she needed to use marijuana in order to calm down . . . ." (Tr. Vol. 1 at 16). Mother also admitted that she used marijuana regularly.

DCS filed a petition alleging that Ay.H., Ar.H., and C.B. were children in need of services ("CHINS"). In November 2015, the trial court adjudicated the children to be CHINS. Following a dispositional hearing, the trial court ordered Mother to: (1) complete a substance abuse assessment and follow all

---

[1] The father of Ay.H. and Ar.H. is deceased.

recommendations with 95% compliance; (2) complete a psychological evaluation and follow all recommendations with 95% compliance; (3) participate in individual therapy and follow all recommendations with 95% compliance; (4) keep her home clean and appropriate; (5) submit to weekly drug screens; and (6) attend all scheduled supervised visits with her children. The trial court ordered Father to complete similar services "[u]pon his release from prison." (Ex. 48).

[6] In January 2017, DCS filed petitions to terminate both Mother's and Father's parental rights. The trial court scheduled the termination hearing for April 2017. After at least twelve continuances attributable to the parties' requests, the trial court's own motions, the trial court's grant of Mother's change of judge motion, and other reasons, the termination hearing was scheduled for March 2018. One week before the scheduled hearing, Father filed a motion for another continuance, which the trial court denied. The day of the hearing, Father renewed his request for a continuance, but the trial court again denied the motion.

[7] Testimony at the March 2018 termination hearing revealed that, at the time of the hearing, Mother was unemployed and lacked stable housing. During the course of the CHINS proceeding, Mother had lived with different family members and friends in different cities and states. Mother testified that she was still using marijuana and planned to do so "until [marijuana] gets legal." (Tr. Vol. 1 at 110). According to Mother, marijuana would "eventually get legalized in every state." (Tr. Vol. 2 at 110). In addition, Mother had not

participated in any of the court-ordered therapeutic services or visited with her children during the year before the hearing.

[8] Regarding Father, the testimony at the 2018 hearing revealed that he had been incarcerated since 2012. Further, in 2017, Father had received three prison violations. Specifically, in January 2017, Father had had a positive drug test and had lost ninety days of credit time. In May 2017, Father had received a violation for unauthorized possession and destruction relating to batteries, and in July 2017, Father had been removed from a substance abuse treatment program following another violation. A July 2017 Department of Correction ("DOC") record provides that Father's "motivation was poor" and that he had "struggled with understanding the rules and developing the willingness to leave the criminal lifestyle." (Ex. Vol. 4 at 217). At the March 2018 hearing, Father testified that he would be released from the DOC between June and November 2018; however, the DOC's Offender Locator provides that his release date is in March 2019. *See* https://www.in.gov/apps/indcorrection/ofs/ofs (last visited 01/10/2019).

[9] Also at the hearing, DCS Family Case Manager Katie Bostic ("FCM Bostic") testified that the children had been removed from Mother because of her housing instability and drug use. FCM Bostic explained that Mother's housing instability had not been remedied and that Mother was living in a hotel at the time of the hearing and was unemployed. In addition, FCM Bostic testified that Mother's drug use had not been remedied as demonstrated by Mother's failure to complete substance abuse treatment and her continued use of

marijuana. Regarding Father, the case manager testified that Father had not been fully compliant with DOC's programs as demonstrated by his three recent violations within the prior year. In addition, FCM Bostic pointed out that C.B. had been only two years old when Father had been sent to DOC, which was six years prior to the hearing, and that foster mother had provided more care for C.B. than Father had.

[10] FCM Bostic asked the trial court to terminate the parental rights of both parents "so that the permanency plan could be achieved for these children." (Tr. Vol. 2 at 10). According to FCM Bostic, the foster parent planned to adopt the three children, and the termination of both Mother's and Father's parental rights would provide consistency and stability for them and would be in their best interests. Lastly, court-appointed special advocate Lester Wadzinski ("CASA Wadzinski") also testified that termination was in the children's best interests. Specifically, CASA Wadzinski explained that, "It's just hard on the kids[,] and they are in a good place with [foster mother]." (Tr. Vol. 2 at 21, 28).

[11] Following the hearing, the trial court issued an order terminating the parental relationships between Mother and Ay.H., Ar.H., and C.B. In addition, the trial court terminated the parental relationship between Father and C.B. Each parent separately appeals the terminations.

# Decision

## 1. Denial of Father's Motion to Continue the Termination Hearing

[12] Father first argues that the trial court abused its discretion in denying his motion to continue the termination hearing. Generally, the decision to grant or deny a motion to continue is within the sound discretion of the trial court, and we will reverse only for an abuse of discretion. *In re J.E.*, 45 N.E.3d 1243, 1246 (Ind. Ct. App. 2015), *trans. denied*. An abuse of discretion occurs when the trial court's conclusion is clearly against the logic and effect of the facts and circumstances before the court or the reasonable and probable deductions to be drawn therefrom. *Id.* When a motion to continue has been denied, an abuse of discretion will be found if the moving party has demonstrated that there was good cause for granting the motion and that he was prejudiced by the denial. *Id.*

[13] Here, Father argues that he has demonstrated the requisite good cause and prejudice because the "denial of [his] motion to continue resulted in the loss of his parental rights." (Father's Br. at 11). We agree with DCS that the gravamen of this argument is that Father "wanted more time to show he was a fit parent." (DCS's Br. at 19). However, our review of the evidence first reveals that the termination hearing had already been continued at least twelve times from its initially scheduled date of April 2017. Father therefore had an additional year to show his fitness as a parent. Despite this opportunity, Father continued to use drugs and break rules while incarcerated. He was also removed from a substance abuse program, and a DOC record noted that, even

after serving six years in the DOC, Father "struggled with understanding the rules and developing the willingness to leave the criminal lifestyle." (Ex. Vol. 4 at 217). Based upon these facts and circumstances, Father has failed to demonstrate both that there was good cause for granting the motion and that he was prejudiced by the denial. The trial court did not abuse its discretion in denying Father's motion to continue the termination hearing.

## 2. Sufficiency of the Evidence to Support the Terminations

[14] Both parents argue that there is insufficient evidence to support the termination of their parental rights. The traditional right of parents to establish a home and raise their children is protected by the Fourteenth Amendment to the United States Constitution. *In re J.W., Jr.*, 27 N.E.3d 1185, 1187-88 (Ind. Ct. App. 2015), *trans. denied*. However, a trial court must subordinate the interests of the parents to those of the child when evaluating the circumstances surrounding a termination. *Id.* at 1188. Termination of the parent-child relationship is proper where a child's emotional and physical development is threatened. *Id.* Although the right to raise one's own child should not be terminated solely because there is a better home available for the child, parental rights may be terminated when a parent is unable or unwilling to meet his or her parental responsibilities. *Id.*

[15] Before an involuntary termination of parental rights may occur, DCS is required to allege and prove, among other things:

> (B) that one (1) of the following is true:

> (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
>
> (ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.
>
> (iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;
>
> (C) that termination is in the best interests of the child; and
>
> (D) that there is a satisfactory plan for the care and treatment of the child.

IND. CODE § 31-35-2-4(b)(2). DCS must prove the alleged circumstances by clear and convincing evidence. *K.T.K. v. Ind. Dep't of Child Servs.,* 989 N.E.2d 1225, 1230 (Ind. 2013).

[16] When reviewing a termination of parental rights, this Court will not reweigh the evidence or judge the credibility of the witnesses. *In re R.S.*, 56 N.E.3d 625, 628 (Ind. 2016). We consider only the evidence and any reasonable inferences to be drawn therefrom that support the judgment and give due regard to the trial court's opportunity to judge the credibility of the witnesses firsthand. *K.T.K.*, 989 N.E.2d at 1229.

[17] Mother and Father both argue that DCS failed to prove by clear and convincing evidence that there is a reasonable probability that the conditions that resulted in the children's removal or the reasons for placement outside the home will not

be remedied.[2] In determining whether the conditions that resulted in a child's removal or placement outside the home will not be remedied, we engage in a two-step analysis. *In re E.M.,* 4 N.E.3d 636, 643 (Ind. 2014). We first identify the conditions that led to removal or placement outside the home and then determine whether there is a reasonable probability that those conditions will not be remedied. *Id.* The second step requires trial courts to judge a parent's fitness at the time of the termination proceeding, taking into consideration evidence of changed conditions and balancing any recent improvements against habitual patterns of conduct to determine whether there is a substantial probability of future neglect or deprivation. *Id.* Habitual conduct may include parents' prior criminal history, drug and alcohol abuse, history of neglect, failure to provide support, and a lack of adequate housing and employment. *A.D.S. v. Ind. Dep't of Child Servs.*, 987 N.E.2d 1150, 1157 (Ind. Ct. App. 2013), *trans. denied.* The trial court may also consider services offered to the parent by DCS and the parent's response to those services as evidence of whether conditions will be remedied. *Id.*

[18] Here, our review of the evidence and any reasonable inferences to be drawn therefrom that support the judgment reveals that the children were removed

---

[2] Father also argues that DCS failed to prove by clear and convincing evidence that the continuation of the parent-child relationships poses a threat to the children's well-being. However, because INDIANA CODE § 31-35-2-4(b)(2)(B) is written in the disjunctive, DCS is required to establish by clear and convincing evidence only one of the three requirements of subsection (B). *In re A.K.,* 924 N.E.3d 212, 220 (Ind. Ct. App. 2010), *trans. dismissed.* We therefore discuss only whether there is a reasonable probability that the conditions that resulted in the children's removal or the reasons for their placement outside the home will not be remedied.

from Mother because of unstable housing and Mother's drug use. C.B. could not be placed with Father because Father was incarcerated for several felonies. At the time of the termination hearing, Mother did not have stable housing and was unemployed. In addition, she continued to use marijuana and did not participate in any of the court-ordered therapeutic services or visited with her children during the year before the hearing. In 2017, after being incarcerated for five years, Father was still failing to comply with prison regulations. Specifically, Father had a positive drug test, received a violation for unauthorized possession and destruction relating to batteries, and was removed from a substance abuse treatment program. These violations caused Father to lose accrued credit time that would have led to an earlier release from the DOC. This evidence supports the trial court's conclusion that there was a reasonable probability that the conditions that resulted in the children's removal would not be remedied. We find no error.

[19] Next, Mother and Father both argue that there is insufficient evidence that the termination was in the children's best interests. In determining whether termination of parental rights is in the best interests of a child, the trial court is required to look at the totality of the evidence. *In re D.D.*, 804 N.E.2d 258, 267 (Ind. Ct. App. 2004), *trans. denied*. In so doing, the court must subordinate the interests of the parents to those of the child involved. *Id.* Termination of the parent-child relationship is proper where the child's emotional and physical development is threatened. *In re R.S.*, 774 N.E.2d 927, 930 (Ind. Ct. App. 2002), *trans. denied*. "A parent's historical inability to provide adequate

housing, stability and supervision coupled with a current inability to provide the same will support a finding that continuation of the parent-child relationship is contrary to the child's best interest." *In re B.D.J.*, 728 N.E.2d 195, 203 (Ind. Ct. App. 2000). Further, the testimony of the service providers may support a finding that termination is in the child's best interests. *McBride v. Monroe Cty. Office of Family and Children*, 798 N.E.2d 185, 203 (Ind. Ct. App. 2003).

[20] Here, our review of the evidence reveals that Mother and Father have historically been unable to provide housing, stability, and supervision for their children and were unable to provide the same at the time of the termination hearing. In addition, FCM Bostic and CASA Wadzinski both testified that termination was in the children's best interests. The testimony of these service providers, as well as the other evidence previously discussed, supports the trial court's conclusion that termination was in the children's best interests.

[21] We reverse a termination of parental rights "only upon a showing of 'clear error'—that which leaves us with a definite and firm conviction that a mistake has been made." *Egly v. Blackford Cty. Dep't of Pub. Welfare*, 592 N.E.2d 1232, 1235 (Ind. 1992). We find no such error here and therefore affirm the trial court.

[22] Affirmed.

Najam, J., and Crone, J., concur.