## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Oct 11 2019, 10:05 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Kimberly A. Jackson
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Abigail R. Recker
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of the Termination of the Parent-Child Relationship of A.J., L.L., & B.L. (Children) and J.L., (Father);

J.L. (Father),

*Appellant-Respondent,*

v.

The Indiana Department of Child Services,

*Appellee-Petitioner*

October 11, 2019

Court of Appeals Case No. 19A-JT-1197

Appeal from the Adams Circuit Court

The Honorable Chad E. Kukelhan, Judge

Trial Court Cause No.
01C01-1807-JT-37
01C01-1807-JT-38
01C01-1807-JT-39

**May, Judge.**

[1]     J.L. ("Father") appeals the involuntary termination of his parental rights to A.J., L.L., and B.L. (collectively, "Children"). He challenges three of the trial court's findings as unsupported by evidence. He also argues the findings do not support three of the court's conclusions: (1) that there was a reasonable probability that the conditions under which Children were removed from his care would not be remedied; (2) that continuation of the Father-Children relationship posed a threat to Children's well-being; and (3) that termination of Father's rights was in Children's best interests. We affirm.

## Facts and Procedural History

[2]     Father is the biological father of A.J., born November 25, 2009; L.L., born May 26, 2013; and B.L., born July 28, 2014.[1] Children lived primarily with Father. In August 2016, A.J., then six years old, "was found at school with three large bumps on the back of his head and he was reporting that his father had picked him up by the shoulders and threw him against the wall." (Tr. Vol. II at 36.) Based thereon, the Department of Child Services ("DCS") removed Children from Father's care on August 26, 2016, and placed them with their respective grandmothers,[2] where they remained throughout the proceedings. DCS filed

---

[1] DCS was unable to locate A.J.'s mother and she does not participate in this appeal. The mother of L.L. and B.L. consented to their adoption and does not participate in this appeal.

[2] A.J. was placed with an unidentified relative for a brief period of time and then moved to his paternal grandmother, where he remained. L.L. and B.L. were placed with their maternal grandmother.

petitions to adjudicate Children as Children in Need of Services ("CHINS") on August 30, 2016.

[3] On August 31, 2016, the State charged Father with Level 5 felony battery resulting in bodily injury to a person less than fourteen years of age[3] for the act that resulted in A.J.'s injuries. Father was arrested on September 2, 2016, and remained incarcerated throughout the entirety of the CHINS and termination of parental rights proceedings. Father pleaded guilty to the Level 5 felony battery charge, and the criminal court entered a no-contact order between Father and A.J. and sentenced Father to six years incarceration, with three years suspended and two years on probation. At the time he battered A.J., Father was on probation for Class B felony neglect of a dependent resulting in seriously bodily injury in a case involving Father's older child, T.L., who is not subject to the current proceedings. On September 14, 2016, the State filed a petition to revoke Father's probation in that case, and the criminal court revoked Father's probation based on the crime against A.J. Father's earliest possible release date was September 2019.

[4] On November 23, 2016, the trial court held a fact-finding hearing on the CHINS petitions during which Father was present and admitted Children were CHINS. On November 29, 2016, the trial court adjudicated Children as CHINS. On March 7, 2017, the trial court entered its dispositional order and

---

[3] Ind. Code § 35-42-2-1(g)(5).

parental participation decree, which required Father to, among other things, participate in homebased counseling, complete a parenting assessment and follow all recommendations, and attend all scheduled visitation. Father did not participate in services due to his incarceration.

[5] On July 10, 2018, DCS filed petitions to terminate Father's parental rights to Children. The trial court held a hearing on the petitions on December 7, 2018, at which Father appeared telephonically because he was incarcerated. On February 21, 2019, the trial court issued an order terminating Father's parental rights to Children.

# Discussion and Decision

[6] We review termination of parental rights with great deference. *In re K.S.,* 750 N.E.2d 832, 836 (Ind. Ct. App. 2001). We will not reweigh evidence or judge credibility of witnesses. *In re D.D.*, 804 N.E.2d 258, 265 (Ind. Ct. App. 2004), *trans. denied*. Instead, we consider only the evidence and reasonable inferences most favorable to the judgment. *Id.* In deference to the juvenile court's unique position to assess the evidence, we will set aside a judgment terminating a parent's rights only if it is clearly erroneous. *In re L.S.*, 717 N.E.2d 204, 208 (Ind. Ct. App. 1999), *reh'g denied*, *trans. denied*, *cert. denied* 534 U.S. 1161 (2002).

[7] "The traditional right of parents to establish a home and raise their children is protected by the Fourteenth Amendment of the United States Constitution." *In re M.B.*, 666 N.E.2d 73, 76 (Ind. Ct. App. 1996), *trans. denied*. A trial court must

subordinate the interests of the parents to those of the children when evaluating the circumstances surrounding a termination. *In re K.S.*, 750 N.E.2d at 837. The right to raise one's own children should not be terminated solely because there is a better home available for the children, *id.*, but parental rights may be terminated when a parent is unable or unwilling to meet parental responsibilities. *Id.* at 836.

[8] To terminate a parent-child relationship, the State must allege and prove:

> (B) that one (1) of the following is true:
>
>> (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
>>
>> (ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.
>>
>> (iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;
>
> (C) that termination is in the best interests of the child; and
>
> (D) that there is a satisfactory plan for the care and treatment of the child.

Ind. Code § 31-35-2-4(b)(2). The State must provide clear and convincing proof of these allegations. *In re G.Y.*, 904 N.E.2d 1257, 1260-61 (Ind. 2009), *reh'g*

*denied*. If the court finds the allegations in the petition are true, it must terminate the parent-child relationship. Ind. Code § 31-35-2-8.

## Challenged Findings

When, as here, a judgment contains specific findings of fact and conclusions thereon, we apply a two-tiered standard of review. *Bester v. Lake Cty. Office of Family & Children*, 839 N.E.2d 143, 147 (Ind. 2005). We determine whether the evidence supports the findings and whether the findings support the judgment. *Id.* "Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference." *Quillen v. Quillen*, 671 N.E.2d 98, 102 (Ind. 1996). If the evidence and inferences support the juvenile court's decision, we must affirm. *In re L.S.*, 717 N.E.2d at 208.

Father challenges three of the trial court's findings, arguing they are not supported by the evidence. We accept the remaining findings as true because Father does not dispute them. *See Madlem v. Arko*, 592 N.E.2d 686, 687 (Ind. 1992) ("Because Madlem does not challenge the findings of the trial court, they must be accepted as correct.").

### *Finding B(2)*

Finding B(2) of the trial court's order[4] states: "The Child was removed from the home following the child being severely injured in the home, resulting in three

---

[4] Each child in this case has a separate order terminating Father's rights to that specific child. The orders are virtually identical, and therefore, unless otherwise indicated, we will quote from the order regarding A.J.

knots on his head and two gashes." (App. Vol. II at 19.) Father contends this finding is inconsistent with the evidence presented because "A.J. was alleged to have three knots on his head, two of which looked like gashes. Thus, the juvenile court found five separate head injuries when only three were alleged and admitted." (Br. of Father at 15.) DCS concedes the finding is erroneous, but it argues the finding does not serve as a basis to overturn the termination of Father's parental rights because there is no dispute that bodily injury resulted from Father's mistreatment of A.J. We agree. The exact number of injuries A.J. sustained is not the essential part of that finding; the finding that Father abused A.J. resulting in bodily injury is unchallenged and supported by the evidence. *See Madlem*, 592 N.E.2d at 687 ("Because Madlem does not challenge the findings of the trial court, they must be accepted as correct."); *and see Lasater v. Lasater*, 809 N.E.2d 380, 398 (Ind. Ct. App. 2004) ("Findings, even if erroneous, do not warrant reversal if they amount to mere surplusage and add nothing to the trial court's decision.").

### *Finding B(14)*

[12]   Finding B(14) of the trial court's order states: "Father has shown no improvement to his overall circumstances." (App. Vol. II at 20.) Father argues this finding is not supported by the evidence:

> Father has demonstrated his reformation through his admission
> of guilt with respect to A.J.'s injury, his acknowledgement that
> the children were CHINS, his recognition of his many mistakes,
> his seeking of psychological help, and his participation during his

incarceration in so many classes aimed at improving himself as a citizen and a parent.

(Father's Br. at 15.)

[13] While it is true that Father participated in many classes while incarcerated, we cannot ignore the fact that Father's incarceration is a result of his battery upon A.J. or that Father had also been on probation for neglecting another child of his. Children have not seen Father in over two years, and Father has not demonstrated the ability to parent following his incarceration. The trial court noted "Father previously completed programming after battering a child and reoffended just seven months following his release." (App. Vol. II at 20.) Father's argument is an invitation for us to reweigh the evidence and judge the credibility of witnesses, which we cannot do. *See In re D.D.*, 804 N.E.2d at 265 (appellate court will not reweigh evidence or judge the credibility of witnesses).

### *Finding B(15)*

[14] Finding B(15) of the trial court's order for each child indicates "Father is not bonded with the Child[,]" (App. Vol. II at 8, 14, 20), and then notes the respective child's age and the fact that Father has been incarcerated for a majority of the child's life and "has had three substantiations for neglect with regard to Child." (*Id.*)[5] Father contends "the record contains no evidence of

---

[5] Father notes the information provided as part of Finding B(15) in A.J.'s order seems to be duplicative of the order for L.L., as it references a five year old girl, and A.J. is a boy. However, Father concedes this was likely a scrivener's error and does not argue such error should result in reversal.

any lack of bonding between Father and any of the three children." (Br. of Father at 16.) We disagree.

Father was incarcerated within days of Children's removal, and the trial court ordered Father to have no contact with A.J. based on the fact that Father battered him. Father has not visited with L.L. or B.L. since their removal. Father claims to have called L.L. and B.L. and written them letters while incarcerated, but the Family Case Manager also testified that he had not demonstrated "an interest, care, or concern for his children during his time of incarceration" to her knowledge. (Tr. Vol. II at 37.) Father's argument is an invitation for us to reweigh the evidence and judge the credibility of witnesses, which we cannot do. *See In re D.D.*, 804 N.E.2d at 265 (appellate court will not reweigh evidence or judge the credibility of witnesses).

## Reasonable Probability Conditions Would Not Be Remedied

The trial court must judge a parent's fitness to care for his child at the time of the termination hearing. *In re A.B.*, 924 N.E.2d 666, 670 (Ind. Ct. App. 2010). Evidence of a parent's pattern of unwillingness or lack of commitment to address parenting issues and to cooperate with services "demonstrates the requisite reasonable probability" that conditions will not change. *Lang v. Starke Cty. OFC*, 861 N.E.2d 366, 372 (Ind. Ct. App. 2007), *trans. denied*. Father argues the trial court's findings do not support its conclusion that there existed a reasonable probability that the conditions under which Children were removed from Father's care would not be remedied, specifically that his period of

incarceration and DCS's inability to offer him the required services while incarcerated made him unable to complete the trial court's required services.

[17] First, it is well-settled that this court does not review the adequacy of services provided during CHINS proceedings when reviewing the propriety of a termination order. *See In re J.W., Jr.*, 27 N.E.3d 1185, 1190 (Ind. Ct. App. 2015) (noting requirement for DCS to provide reasonable services was not a requisite element of parental rights termination statute and DCS's failure to provide services could not serve as basis to attack termination order), *trans. denied*. Further, the trial court found, "Father has demonstrated a four year pattern of child abuse and neglect and has not demonstrated the ability to ensure Child's safety and well-being when released. Father reported the stressors outside of prison caused the ongoing physical abuse and neglect to occur." (App. Vol. II at 20.) Father does not challenge this finding, and thus it stands as proven. *See Madlem*, 592 N.E.2d at 687 ("Because Madlem does not challenge the findings of the trial court, they must be accepted as correct.").

[18] Children were removed from Father's care because Father abused A.J., has a pattern of abusing and neglecting his children, and has not demonstrated the stressors that triggered these incidents were remedied. Accordingly, we cannot say the trial court erred when it concluded the conditions under which Children were removed from Father's care would not be remedied. *See Lang*, 861 N.E.2d

at 372 ("A pattern of repeated abuse is relevant to a determination that a reasonable probability exists that the condition will not be remedied.").[6]

## Children's Best Interests

[19] In determining what is in Children's best interests, a trial court is required to look beyond the factors identified by DCS and consider the totality of the evidence. *In re A.K.*, 924 N.E.2d 212, 223 (Ind. Ct. App. 2010), *trans. dismissed*. A parent's historical inability to provide a suitable environment, along with the parent's current inability to do so, supports finding termination of parental rights is in the best interests of the child. *In re A.L.H.*, 774 N.E.2d 896, 990 (Ind. Ct. App. 2002). The recommendations of a DCS case manager and court-appointed advocate to terminate parental rights, in addition to evidence that conditions resulting in removal will not be remedied, are sufficient to show by clear and convincing evidence that termination is in Children's best interests. *In re J.S.*, 906 N.E.2d 226, 236 (Ind. Ct. App. 2009).

[20] Father argues termination of his parental rights is not in Children's best interests because

---

[6] Because Indiana Code section 31-35-2-4(b)(2)(B) is written in the disjunctive, we need decide only if the evidence and findings support the trial court's conclusion as to one of these two requirements. *See In re L. S.*, 717 N.E.2d at 209 (because statute written in disjunctive, court needs to find only one requirement to terminate parental rights). Because the trial court's findings supported its conclusion that the conditions under which Children were removed from Father's care would not be remedied, we need not consider Father's argument regarding whether the continuation of the Father-Children relationship poses a risk to Children's well-being.

> [Father] would not be appealing the judgement unless he believed he could parent ably. He simply needs the opportunity to prove to the juvenile court and to his children the sincerity and accuracy of his belief. His efforts in prison strongly suggest he can be a fit parent.

(Br. of Father at 24.) While Father allegedly took steps towards rehabilitation while in prison, he has not shown that he can properly parent Children, and his past pattern of behavior suggests otherwise. He additionally notes that he is willing to participate in any services required to regain custody of Children. However, the time for such action has passed.

[21] Children have been removed from Father's care for over three years, and we cannot allow Father's promises of change to create continued upheaval and instability in Children's lives. *See Lehman v. Lycoming Cty. Children's Servs. Agency*, 458 U.S. 502, 511 (1982) ("It is undisputed that children require secure, stable, long-term, continuous relationships with their parents or foster parents. There is little that can be as detrimental to a child's sound development as uncertainty."). Both the Family Case Manager and Children's Guardian ad litem testified that termination of Father's parental rights was in Children's best interests. We find no error. *See In re A.B.*, 887 N.E.2d 158, 170 (Ind. Ct. App. 2008) (testimony of family case manager and other service providers that termination of mother's parental rights was in child's best interests supported trial court's conclusion that termination of mother's parental rights was in child's best interests).

# Conclusion

Two of the findings challenged by Father are supported by evidence and any error regarding the third does not warrant reversal because the allegedly erroneous portion of the finding was merely surplusage. Additionally, the trial court's findings support its conclusions that the conditions under which Children were removed from Father's care would not be remedied and that termination of Father's parental rights was in Children's best interests. Accordingly, we affirm the termination of Father's rights.

Affirmed.

Najam, J., and Bailey. J., concur.