## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Nov 21 2019, 9:39 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Jennie Scott
Muncie, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Natalie F. Weiss
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In the Matter of the Termination of the Parent-Child Relationship of K.S. (Minor Child); | November 21, 2019 |
| T.R. (Mother), | Court of Appeals Case No. 19A-JT-1363 |
| *Appellant-Respondent,* | Appeal from the Delaware Circuit Court |
| v. | The Honorable Kimberly S. Dowling, Judge |
| Indiana Department of Child Services, | The Honorable Amanda L. Yonally, Magistrate |
| *Appellee-Petitioner.* | Trial Court Cause No. 18C02-1809-JT-88 |

**Najam, Judge.**

## Statement of the Case

T.R. ("Mother") appeals the trial court's termination of her parental rights over her minor child, K.S. ("Child").[1] Mother raises three issues for our review, which we consolidate and restate as whether the trial court clearly erred when it terminated her parental rights. We affirm.

## Facts and Procedural History

Mother gave birth to Child on September 28, 2009. On September 2, 2016, the Indiana Department of Child Services ("DCS") received a report that Mother, who was Child's sole caregiver, had tested positive for methamphetamine. In response to that report, DCS Family Case Manager ("FCM") Samantha Winans removed Child from Mother's home. On September 7, DCS filed a petition alleging that Child was a Child in Need of Services ("CHINS"). That same day, the trial court held an initial hearing. At that hearing, Mother admitted that she "uses illicit substances such as, but not limited to, methamphetamine." Ex. at 7. Accordingly, the trial court adjudicated Child a CHINS.

On November 14, the court entered its dispositional decree and ordered Mother to contact the FCM every week, to maintain suitable housing, to not use any illegal substances, and to obey the law. The court also ordered Mother to participate in services, including a substance abuse assessment, random drug

---

[1] Child's father does not participate in this appeal.

screens, home-based case management, and visitation with Child, and to follow all recommendations of the service providers. In November 2016, Mother was arrested and charged with theft. Mother ultimately pleaded guilty to that charge. Mother was not compliant with services. FCM Winans put in a referral for Mother to complete a substance abuse assessment, but Mother did not complete that assessment. Mother also did not consistently contact FCM Winans. In late 2016 and early 2017, Mother would go "quite a few months" without communicating with FCM Winans. *Id*. at 52. And FCM Winans was "unable to locate" Mother for most of 2017. *Id*.

[4] After the trial court entered its dispositional decree, Mother initially visited with Child under the supervision of family members. However, due to "issues that were ongoing with the family," DCS "ended up putting in service providers" to supervise the visits. *Id*. at 47. After DCS moved the visits to a service provider, Mother was "fairly consistent" with visits. *Id*. But Mother became "inconsistent" with visits in early 2017. *Id*. at 54. Mother would visit with Child for a period of time but would then go "missing for a few months." *Id*. Throughout that time, FCM Winans believed that Mother was visiting with Child at her placement, which was "outside the court order." *Id*. at 98.

[5] Between June and December 2016, Mother submitted to "some" drug screens. *Id*. at 47. But Mother's testing schedule was "[v]ery sporadic." *Id*. at 50. On a few occasions, Mother requested drug treatment because "she knew that she needed to get sober." *Id*. at 51. But Mother did not follow through with any of the treatment DCS had recommended, nor did she complete any treatment on

her own. Mother was not able to maintain "any period of sobriety." *Id*. at 52. Mother tested positive for illegal substances on ten occasions in the second half of 2016, and she did not submit to any drug tests during 2017. In early 2018, Mother was arrested and charged with possession of methamphetamine. Thereafter, Mother pleaded guilty to possession of paraphernalia.

[6] On May 15, 2018, Mother completed the initial intake for the home-based case work. However, the next day, Child's court appointed special advocate ("CASA") filed a motion to suspend visitation because Mother had not visited Child "in well over a year" and because Child told the CASA that she "did not wish to visit with her mother and could contemplate no circumstance in which she would want to visit her Mother." *Id*. at 84, 85. Based on Child's wishes and Mother's "lack of engagement in services," the trial court granted the CASA's motion to suspend visitation. *Id*. at 86. Because the court had suspended Mother's visits with Child, Mother informed Brittany Little, her home-based case worker, that "she didn't want to work with" Little. *Id*. at 33. Little informed Mother that she still wanted to work on other areas of home-based case work, including sobriety and appropriate housing, but Mother declined to work with Little. Mother "never" completed the home-based case work. *Id*. at 44.

[7] In mid-2018, FCM Winans put in a second referral for Mother to complete a substance abuse assessment, which Mother ultimately completed in May. As a result of that assessment, it was recommended that Mother engage a recovery coach. But Mother did not work with the recovery coach. Mother told FCM

Winans that "she was not going to participate in services" if she could not visit with Child. *Id*. at 45. FCM Winans attempted to explain to Mother that the services "could still help her" and that "doing certain services and showing that she could maintain sobriety and consistency with those services could lead to her getting her visits back." *Id*. at 46. But Mother did not participate in services.

[8] On September 5, 2018, DCS filed a petition to terminate Mother's parental rights over Child. Thereafter, on September 10, Mother tested positive for methamphetamine and amphetamine. Mother again tested positive for methamphetamine, amphetamine, and THC on October 19. The court held a fact-finding hearing on the petition to terminate Mother's parental rights on November 29, 2018, and February 28, 2019. Meanwhile, on January 16, 2019, Mother again tested positive for a "controlled substance." *Id*. at 112.

[9] Thereafter, on May 21, the court entered the following findings of fact and conclusions of law:

> 4. [Child] was removed from the care of Mother on an emergency basis on or about September 2, 2016[,] due to allegations of abuse and/or neglect.
>
> 5. DCS filed a Verified Petition alleging a child to a be a Child in Need of Services under cause number 18C02-1609-JC-000270 on or about September 7, 2016.
>
> 6. [Child] was adjudicated to be a Child in Need of Services on October 4, 2016.

7. A Dispositional Decree was entered against Mother on or about December 7, 2016.

8. Under the Dispositional Decree, Mother was ordered to maintain contact with DCS, obtain and maintain stable housing and employment, not consume any illicit substance, obey the law, complete a substance abuse assessment and follow all recommendations, submit to random and scheduled drug screens, attend all supervised visitation[,] and participate in home based casework to assist with parenting skills, coping skills, housing, employment[,] and transportation as needed.

9. DCS Family Case Manager, Samantha Winans, was assigned to this case and had been working with Mother prior to the child's removal in September 2016.

10. During DCS' assessment, Mother admitted to FCM Winans that she used methamphetamine in the presence of [Child]. FCM Winans attempted to work with Mother to avoid removal of [Child] from her care. However, Mother continued to test positive for methamphetamine, and [Child] was removed from her care on September 2, 2016.

11. FCM Winans made service referrals for Mother for a substance abuse assessment, homebased casework[,] and supervised visitation with [Child].

12. Mother failed to complete the substance use assessment with Meridian Health Services on two (2) separate occasions.

13. Mother completed a substance use assessment with Centerstone in May 2018. Recommendations from the substance use assessment included that Mother should work with a recovery coach.

14. Mother did not engage with a recovery coach.

15. Although she initially seemed motivated, Mother did not complete homebased casework. Mother completed an intake with Children's Bureau for homebased casework in May 2018 but then failed to participate in the service.

16. Mother was inconsistent in her participation in supervised visitation with [Child].

17. Mother's visitation with [Child] was suspended on or about May 15, 2018[,] upon the request and recommendation of the CASA. Mother had not been participating in supervised visitation but had been visiting with [Child] at her kinship placement, contrary to the Court's order on visitation for Mother.

18. [Child] does not wish to visit with Mother.

19. Following the suspension of her visitation, Mother stopped engaging in any services, stating that she was not going to participate in services if she could not visit with [Child].

20. Mother failed to complete any service ordered under the Dispositional Decree.

21. As part of disposition in this case, Mother was ordered to provide random and scheduled drug screens. Mother provided some screens but was not consistent.

22. Mother continues to use illicit substances, including methamphetamine. Most recently, Mother tested positive for illicit substances on September 10, October 4, and October 18, 2018[,] and January 16, 2019.

23. Mother requested substance abuse treatment but failed to follow through with any recommended treatment.

24. By her own admission, Mother gave up on reunification with [Child].

25. Mother failed to demonstrate that she could maintain suitable and safe housing for [Child].

26. Mother failed to demonstrate that she has a legal source of income to support [Child].

27. Mother failed to maintain communication with DCS on a consistent basis.

28. Through 2017, FCS Winans was unable to locate Mother and communication with Mother was minimal throughout 2017.

29. Mother has been convicted of theft under 18C02-1703-F6-000230.

30. Mother was criminally charged with possession of methamphetamine in February 2018.

31. [Child] has been removed from Mother's care for over 29 months. [Child] is currently placed in licensed foster care . . . and is thriving in her current environment.

32. [Child's] foster placement is willing and able to adopt [Child] if parental rights are terminated.

33. Melissa Staton is [Child's] CASA. Ms. Staton has determined that terminating Mother's parenting rights is in the best interest of [Child] and that [Child] should be adopted.

34. Mother admitted that adoption is appropriate for [Child] but would like her ex-husband to adopt [Child].

35. [Child] needs a safe, stable, secure[,] and permanent environment in order to thrive. Mother has not shown the inclination or the ability to provide [Child] with such an environment and has not demonstrated that she is able to provide a home free of abuse or neglect for [Child]. Mother's habitual patterns of conduct support the substantial probability of future neglect or deprivation of [Child]. Evidence of Mother's criminal history, continued substance abuse, and lack of adequate housing and employment are all factors that support termination of Mother's parental rights.

36. There is a reasonable probability that the conditions that resulted in [Child's] removal and continued placement outside of the home will not be remedied. Throughout the duration of [Child's] CHINS case, Mother either failed to participate in or benefit from services ordered in the Dispositional Decree. Mother did not avail herself of services that could have assisted her. Mother did not maintain communication with DCS and has not demonstrated that she has addressed her substance abuse. DCS has presented clear and convincing evidence upon which the court can reasonably conclude that Mother has not remedied the conditions that resulted in [Child's] removal from her care.

37. [Child] has been removed from her parents and under the supervision of the local office of family and children for at last six months under a dispositional decree and more than fifteen of the most recent twenty-two months. As of the date of the conclusion

of the fact-finding hearing, [Child] had been out of her Mother's care for approximately two and a half years.

38.  Termination of the parent/child relationship is in the best interest of [Child].

39.  The Indiana DCS has a satisfactory plan for the care and treatment of [Child], which includes adoption.

Appellant's App. Vol. II at 52-54 (citation omitted).  In light of its findings and conclusions, the court terminated Mother's parental rights over Child.  This appeal ensued.

# Discussion and Decision

## *Standard of Review*

[10]  Mother appeals the trial court's termination of her parental rights over Child. We begin our review of this appeal by acknowledging that "[t]he traditional right of parents to establish a home and raise their children is protected by the Fourteenth Amendment of the United States Constitution." *Bailey v. Tippecanoe Div. of Fam. & Child. (In re M.B.)*, 666 N.E.2d 73, 76 (Ind. Ct. App. 1996), *trans. denied*.  However, a trial court must subordinate the interests of the parents to those of the child when evaluating the circumstances surrounding a termination.  *Schultz v. Porter Cty. Off. of Fam. & Child. (In re K.S.)*, 750 N.E.2d 832, 837 (Ind. Ct. App. 2001).  Termination of a parent-child relationship is proper where a child's emotional and physical development is threatened.  *Id.* Although the right to raise one's own child should not be terminated solely

because there is a better home available for the child, parental rights may be terminated when a parent is unable or unwilling to meet his or her parental responsibilities. *Id.* at 836.

[11] Before an involuntary termination of parental rights can occur in Indiana, DCS is required to allege and prove:

> (B) that one (1) of the following is true:
>
>> (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
>>
>> (ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.
>>
>> (iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;
>
> (C) that termination is in the best interests of the child; and
>
> (D) that there is a satisfactory plan for the care and treatment of the child.

Ind. Code § 31-35-2-4(b)(2) (2018). DCS's "burden of proof in termination of parental rights cases is one of 'clear and convincing evidence.'" *R.Y. v. Ind. Dep't of Child Servs. (In re G.Y.)*, 904 N.E.2d 1257, 1260-61 (Ind. 2009) (quoting I.C. § 31-37-14-2).

[12]   When reviewing a termination of parental rights, we will not reweigh the evidence or judge the credibility of the witnesses. *Peterson v. Marion Cty. Off. of Fam. & Child. (In re D.D.)*, 804 N.E.2d 258, 265 (Ind. Ct. App. 2004), *trans. denied*. Instead, we consider only the evidence and reasonable inferences that are most favorable to the judgment. *Id.* Moreover, in deference to the trial court's unique position to assess the evidence, we will set aside the court's judgment terminating a parent-child relationship only if it is clearly erroneous. *Judy S. v. Noble Cty. Off. of Fam. & Child. (In re L.S.)*, 717 N.E.2d 204, 208 (Ind. Ct. App. 1999), *trans. denied*.

[13]   Here, in terminating Mother's parental rights, the trial court entered specific findings of fact and conclusions thereon. When a trial court's judgment contains special findings and conclusions, we apply a two-tiered standard of review. *Bester v. Lake Cty. Off. of Fam. & Child.*, 839 N.E.2d 143, 147 (Ind. 2005). First, we determine whether the evidence supports the findings and, second, we determine whether the findings support the judgment. *Id.* "Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference." *Quillen v. Quillen*, 671 N.E.2d 98, 102 (Ind. 1996). If the evidence and inferences support the trial court's decision, we must affirm. *In re L.S.*, 717 N.E.2d at 208.

[14]   On appeal, Mother contends that the juvenile court erred when it concluded that: (1) the conditions that resulted in Child's removal and the reasons for Child's placement outside of her home will not be remedied; (2) termination is

in Child's best interests; and (3) there is a satisfactory plan for the care and treatment of the Child.[2] We address each argument in turn.

### *Reasons for Removal from Mother's Home*

[15] Mother first asserts that the trial court erred when it concluded that the conditions that resulted in Child's removal from her care will not be remedied. In determining whether the conditions that led to a child's placement outside the home will not be remedied, a trial court is required to (1) ascertain what conditions led to the child's removal or placement and retention outside the home; and (2) determine whether there is a reasonable probability that those conditions will not be remedied. *R.C. v. Ind. Dep't of Child Servs. (In re K.T.K.)*, 989 N.E.2d 1225, 1231 (Ind. 2013). Here, the trial court found that DCS had removed Child from Mother's home because of Mother's drug use.

[16] In order to determine whether there is a reasonable probability that the conditions that resulted in removal will not be remedied, the court should assess a parent's "fitness" at the time of the termination hearing, taking into consideration any evidence of changed conditions. *E.M. v. Ind. Dep't of Child Servs. (In re E.M.)*, 4 N.E.3d 636, 643 (Ind. 2014). The court must weigh any improvements the parent has made since removal against the parent's "habitual patterns of conduct to determine whether there is a substantial probability of

---

[2] Mother also contends that DCS "did not meet the burden of proof in proving that Mother poses a threat to the well-being of the child" and that "child has not been adjudicated as a child in need of services on two separate occasions." Appellant's Br. at 21, 22. However, the trial court did not make any such conclusions.

future neglect or deprivation." *Id.* When making such decisions, courts should consider evidence of a "parent's prior criminal history, drug and alcohol abuse, history of neglect, failure to provide support, lack of adequate housing, and employment." *Evans v. St. Joseph Cty. Off. of Fam. & Child. (In re A.L.H.)*, 774 N.E.2d 896, 990 (Ind. Ct. App. 2002).

[17] Here, the evidence demonstrates that Mother failed to complete services. Mother only submitted to "some" drug screens between June and December 2016, but her testing schedule was "very sporadic." *Id.* at 47, 50. During that time frame, Mother tested positive for illegal substances on ten occasions. And Mother did not submit to any drug tests as ordered in 2017. Mother ultimately completed a substance abuse assessment in May 2018, but she did not follow through with the recommendation to engage with a recovery coach.[3] Mother continues to use illegal substances. Indeed, Mother tested positive for methamphetamine and amphetamine in September and October 2018. And, by Mother's own admission, Mother tested positive for a "controlled substance" on January 16, 2019, which was approximately two months after the court began the fact-finding hearing on the petition to terminate her parental rights and only one month before the court concluded that hearing. *Id.* at 112.

---

[3] Mother contends that "there is no evidence that this was the recommendation of the assessment[.]" Appellant's Br. at 15. But FCM Winans testified at the fact-finding hearing that a recovery coach was recommended after Mother's substance abuse assessment. *See* Tr. Vol. II at 46.

[18]   Mother also failed to participate in the home-based case work. While Mother completed the initial intake in mid-2018, she refused to work with her home-based case worker because her visits with Child had been suspended. Mother "never" completed that service. *Id*. at 44. And Mother did not maintain contact with DCS. Indeed, in late 2016 and early 2017, Mother would go "quite a few months" without contacting FCM Winans. Tr. Vol. II at 52. And FCM Winans was unable to locate Mother for most of 2017. Additionally, while Mother initially visited with Child on a fairly consistent basis, as of early 2017, Mother became inconsistent with her supervised visits. But Mother violated the court order and continued to visit with Child at her placement. And in May 2018, Child's CASA filed a motion to suspend visitation because Mother had not visited Child "in well over a year." *Id*. at 84. Further, throughout the CHINS proceedings, Mother was twice convicted of crimes.

[19]   That evidence supports the trial court's findings, and the findings support the court's conclusion.[4] Mother's argument on appeal is simply a request for this Court to reweigh the evidence, which we cannot do. The trial court did not clearly err when it concluded that there is a reasonable probability that the

---

[4] Mother challenges the trial court's findings that she lacks a legal source of income and that she lacks suitable housing. However, we need not determine whether those findings are supported by the record. It is well settled that erroneous findings do not warrant reversal if they amount to mere surplusage and add nothing to the trial court's decision. *See Lasater v. Lasater*, 809 N.E.2d 380, 398 (Ind. Ct. App. 2004). Here, as discussed above, the trial court found that Mother continues to use drugs, that she failed to complete services, and that she was twice convicted of crimes during the CHINS proceedings. Those findings are supported by the record, and they support the court's conclusion. Accordingly, the court's findings that Mother lacks income or appropriate housing is mere surplusage and, as such, does not warrant reversal even if erroneous.

conditions that resulted in the Child's removal or the reasons for placement outside of Mother's home will not be remedied.[5]

### *Best Interests*

[20] Mother next contends that the trial court clearly erred when it concluded that termination of her parental rights is in Child's best interests. In determining whether termination of parental rights is in the best interests of a child, the trial court is required to look at the totality of the evidence. *A.S. v. Ind. Dept's of Child Servs. (In re A.K.)*, 924 N.E.2d 212, 224 (Ind. Ct. App. 2010). "A parent's historical inability to provide adequate housing, stability and supervision coupled with a current inability to provide the same will support a finding that termination of the parent-child relationship is in the child's best interests." *Castro v. State Off. of Fam. & Child.*, 842 N.E.2d 367, 374 (Ind. Ct. App. 2006), *trans. denied*. "Additionally, a child's need for permanency is an important consideration in determining the best interests of a child." *In re A.K.*, 924 N.E.2d at 224.

[21] When making its decision, the court must subordinate the interests of the parents to those of the child. *See Stewart v. Ind. Dep't of Child Servs. (In re J.S.)*, 906 N.E.2d 226, 236 (Ind. Ct. App. 2009). "The court need not wait until a

---

[5] To the extent Mother contends that the court's termination order is clearly erroneous because DCS did not offer her adequate services during the CHINS proceedings, that contention is without merit. Our courts have "long recognized that, in 'seeking termination of parental rights,' the DCS has no obligation to 'plead and prove that services have been offered to the parent to assist in fulfilling parental obligations.'" *T.D. v. Ind Dep't of Child Servs. (In re J.W.)*, 27 N.E.3d 1185, 1190 (Ind. Ct. App. 2015) (quoting *S.E.S. v. Grant Cty. Dep't of Welfare*, 594 N.E.3d 447, 448 (Ind. 1992)), *trans. denied*.

child is irreversibly harmed before terminating the parent-child relationship." *Id*. Moreover, this Court has previously held that recommendations of the family case manager and court-appointed advocate to terminate parental rights, coupled with evidence that the conditions resulting in removal will not be remedied, are sufficient to show by clear and convincing evidence that termination is in the child's best interests. *Id*.

[22] Here, Mother contends that termination was not in Child's best interests because Mother "was engaged in supervised visitation" with Child and because Mother "was not given a chance to reunify the relationship" with Child. Appellant's Br. at 23. In essence, Mother maintains that DCS "has not submitted any evidence that it is in the best interests of the child for the Mother's parental rights to be terminated." *Id*.

[23] Mother's contentions on appeal again amount to a request that we reweigh the evidence, which we cannot do. Both FCM Winans and Child's CASA testified that adoption was in Child's best interests. Child's CASA also testified that Child is "thriving" in her current placement and she is "making a bond with the family." *Id*. Further, the evidence demonstrates that Mother received referrals for several services but that she did not complete any one service. And Mother continues to use drugs. By her own admission, Mother tested positive for a "controlled substance" as recently as January 16, 2019. Prior to that, Mother testified positive for methamphetamine and amphetamine in September and October 2018. And Mother was convicted of crimes on two separate occasions during the CHINS proceedings.

Child needs consistent and reliable care, and she needs permanency. The totality of the evidence, including Mother's substance abuse issues and criminal history and Mother's failure to complete any service, supports the trial court's conclusion that termination of Mother's parental rights is in Child's best interests.

### Satisfactory Plan

Finally, Mother asserts that the trial court erred when it concluded that DCS has a satisfactory plan for the care and treatment of Child. Mother specifically contends that DCS's plan is not satisfactory because the "case manager did not go into detail about the child or the child's plan." Appellant's Br. at 24. In essence, Mother asserts that, because DCS's plan lacks detail, "[t]here is no way to determine if the plan is satisfactory[.]" *Id.* We cannot agree.

Indiana courts have traditionally held that for a plan to be satisfactory, for the purposes of the termination statute, it need not be detailed, so long as it offers a general sense of the direction in which the child will be going after the parent-child relationship is terminated. *K.W. v. Ind. Dep't of Child Servs. (In re A.S.)*, 17 N.E.3d 994, 1007 (Ind. Ct. App. 2014) (citation omitted), *trans. denied*. A DCS care plan is satisfactory if the plan is to attempt to find suitable parents to adopt the children. *Id.* Here, DCS presented evidence that Child's current foster parents plan to adopt her. Thus, the care plan is satisfactory.

Still, Mother contends that DCS's plan for Child to be adopted by her current placement is not satisfactory because it would be better for Child to be adopted

by Mother's ex-husband. In other words, Mother contends that Child's foster parents are not suitable people to adopt Children. However, we need not address whether the foster parents are suitable adoptive parents. It is within the authority of the adoption court, not the termination court, to determine whether an adoptive placement is appropriate. *See id*. We conclude that the juvenile court did not err when it determined that DCS's plan of adoption was satisfactory.

[28] In sum, we affirm the juvenile court's termination of Mother's parental rights over Child.

[29] Affirmed.

Bailey, J., and May, J., concur.